**In the Interest of K.M.H.**

No. 14–04–00458–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

July 14, 2005.

Supplemental Opinion on Rehearing
Dec. 8, 2005.

Mary Peter Cudd, Angleton, Melissa Kite, Surside, for appellant.

Jeffrey Douglas Kyle, Pearland, for appellee.

Panel consists of Justices YATES, ANDERSON, and HUDSON.

## MAJORITY OPINION

JOHN S. ANDERSON, Justice.

Earl Leroy Hoback appeals from a judgment terminating his parental rights to his daughter, K.M.H. On appeal, Hoback complains (1) the trial court erred in denying his request for a jury trial, (2) the trial court erred in denying counsel's request to withdraw from representation, and (3) trial counsel was ineffective. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Earl Hoback is the father, and Melissa Kite is the mother, of K.M.H., born April 8, 2003. Four days after her birth, K.M.H. was placed in protective custody. On April 14, 2003, the Brazoria County Children's Protective Services Unit, Texas Department of Protective and Regulatory Services ("CPS"), filed a suit affecting the parent-child relationship in which CPS sought temporary conservatorship of the child and termination of the parent-child relationship between K.M.H. and both parents. After a bench trial, the trial court terminated both parents' parental rights. Hoback files this appeal from the trial court's judgment terminating his parental rights. The trial court filed findings of fact and conclusions of law; on appeal, Hoback does not challenge the findings of fact and conclusions of law.

The trial court's findings and conclusions are excerpted below, in pertinent part:

### Findings of Fact

1. The child who is the subject of this suit is [K.M.H.]

2. The mother of the child is [Kite] and the father of the child is [Hoback].

3. [CPS] was named temporary managing conservator of the child on [the] 14[th of] April 2003.

4. [Kite] did not appear for trial and wholly made default.

5. [Hoback] did not appear for trial and wholly made default.

6. All counsel announced ready for trial.

7. [Kite] consumed alcohol and smoked marijuana regularly during her pregnancy with [K.M.H.]

8. On 04–12–03, [Kite] smoked marijuana and drank alcohol to the point of intoxication.

9. On 04–12–03, [Kite] breast fed [K.M.H.] following her own usage of alcohol and marijuana.

10. On 04–12–03, [Kite] allowed [K.M.H.] to ride in a vehicle operated by [Hoback] who was operating the vehicle while he was intoxicated.

11. [Kite] used "crank" and cocaine during her pregnancy with [K.M.H.]

12. [Kite] knew that her use of alcohol, marijuana, "crank," and cocaine during her pregnancy with [K.M.H.] endangered [K.M.H.]

13. [Hoback] was aware of [Kite's] use of alcohol, marijuana, and controlled substances during her pregnancy with [K.M.H.] and he used alcohol and drugs with her during the period of her pregnancy.

14. [Hoback] knew that [Kite's] abuse of drugs and use of alcohol during

her pregnancy with [K.M.H.] endangered the child.

15. On 04–12–03, [Hoback] operated a motor vehicle while he was intoxicated while [K.M.H.] was a passenger in the vehicle.

. . .

17. [Hoback] pleaded guilty to the offense of endangering a child by operating a motor vehicle while he was intoxicated on 04–12–03 endangering [K.M.H.]

. . .

19. The temporary orders entered in this cause on 04–22–03 specifically established the following actions [Kite] and [Hoback] needed to accomplish to obtain the return of the child: submit to a psychological assessment and follow all recommendations of the psychologist; successfully complete counseling; submit to a complete drug and alcohol abuse assessment and to follow all recommendations made by facility staff for further assessment or treatment; remain drug and alcohol free during the pendency of the suit; obtain and maintain a safe and stable home; and, comply with the service plans.

. . .

22. [Hoback] failed to comply with and complete the foregoing actions necessary for him to obtain return of the child.

23. [Hoback] tested positive for marijuana on 04–23–03, 05–15–03, 06–18–03, 06–26–03, and 08–25–03.

24. [Hoback] did not exercise any visitation with [K.M.H.] from 08–29–03 through 03–15–04.

. . .

26. [Hoback] did not obtain or maintain a safe and stable home during the pendency of the case.

27. CPS provided and made the court-ordered services available to [Hoback] and [Kite].

28. CPS['s] plans for the child are to pursue adoption of the child by the foster family with which she has been placed since she was placed into protective custody.

29. [K.M.H.]'s needs are being met in her current placement and she is provided with a safe and stable home.

### Conclusions of Law

. . .

6. CPS has had temporary managing conservatorship of [K.M.H.] in excess of nine months.

. . .

9. [Hoback] engaged in conduct that endangered the physical or emotional well-being of [K.M.H.]

10. [Hoback] knowingly placed [K.M.H.] with a person who engaged in conduct that endangered the physical or emotional well-being of [K.M.H.]

11. [Hoback] failed to comply with the provisions of the temporary orders in this cause which specifically established the actions he needed to take to obtain return of [K.M.H.]

12. [Hoback] failed to regularly visit or maintain significant contact with [K.M.H.]

13. CPS made reasonable efforts to return [K.M.H.] to Hoback.

14. [Hoback] has demonstrated an inability to provide the child with a safe environment.

15. Termination of the parent-child relationship between [Hoback] and

[K.M.H.] would be in the best interests of the child.

16. It would be in the best interests of [K.M.H.] for CPS to be named the managing conservator of the child.

## DISCUSSION

### I. Denial of Request for Jury Trial and Denial of Motion to Withdraw

In his first and second points of error, Hoback argues the trial court erred in denying his request for a jury trial and in denying trial counsel's motion to withdraw. At oral argument before this court, Hoback orally waived these two points on appeal. Thus, we do not address the arguments made under these two points.

### II. Ineffective Assistance of Counsel

In his third point of error, Hoback argues trial counsel failed to provide him competent representation both during and after the termination proceedings, in violation of his right to due process of law. Specifically, Hoback complains counsel was ineffective in (1) failing to preserve legal and factual sufficiency points of error, (2) failing to timely request a trial by jury, (3) failing to make any requests for discovery, (4) failing to ensure a complete record was made during significant pretrial motions, (5) failing to timely withdraw from dual representation, and (6) failing to ensure Hoback was present for trial.

### A. Standard of Review

The statutory right to counsel in parental-rights termination cases embodies the right to effective counsel. *See In re M.S.*, 115 S.W.3d 534, 544 (Tex.2003). The Texas Supreme Court has adopted the test enunciated in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), as the standard for ineffective assistance in civil parental-termination

proceedings. In *Strickland*, the United States Supreme Court stated:

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687, 104 S.Ct. 2052. A defendant must successfully show both prongs of the *Strickland* inquiry to establish an ineffective assistance claim. *See In re M.S.*, 115 S.W.3d at 545.

"With respect to whether counsel's performance in a particular case is deficient, we must take into account all of the circumstances surrounding the case, and must primarily focus on whether counsel performed in a 'reasonably effective' manner." *In re M.S.*, 115 S.W.3d at 545 (quoting *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052). "Counsel's performance falls below acceptable levels of performance when the 'representation is so grossly deficient as to render proceedings fundamentally unfair....'" *Id.* (quoting *Brewer v. State*, 649 S.W.2d 628, 630 (Tex.Crim.App.1983)). "In this process, we must give great deference to counsel's performance, indulging 'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,' including the possibility that counsel's actions are strategic." *Id.* (quoting *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052; *Garcia v. State*, 57 S.W.3d 436, 440–41 (Tex.Crim.App.2001); *Gamble v. State*, 916 S.W.2d 92, 93 (Tex. App.-Houston [1st Dist.] 1996, no pet.)). "It is only when 'the conduct was so outrageous that no competent attorney would

have engaged in it,' that the challenged conduct will constitute ineffective assistance." *Id.* (quoting *Garcia*, 57 S.W.3d at 440; *Thompson v. State*, 9 S.W.3d 808, 812–13 (Tex.Crim.App.1999)). Scrutiny of counsel's performance is highly deferential, and there is a strong presumption that counsel's actions could have been the result of sound trial strategy. *Strickland*, 466 U.S. at 688, 104 S.Ct. 2052; *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex.Crim. App.1986). Without testimony from trial counsel, we must presume counsel had a plausible reason for her conduct. *Gibbs v. State*, 7 S.W.3d 175, 179 (Tex.App.-Houston [1st Dist.] 1999, pet. ref'd).

■ With respect to the requirement under *Strickland* that an appellant must show counsel's deficient performance prejudiced his defense, as explained in *Mitchell v. State*, "[t]his means that the appellant must show a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different." 68 S.W.3d 640, 642 (Tex.Crim.App.2002). A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. *Id.* at 642.

Keeping the *Strickland* guidelines in mind, we review Hoback's ineffective assistance complaints.

## B. Preservation of Legal and Factual Sufficiency Points of Error

■ Hoback complains counsel was ineffective because she failed to preserve legal and factual sufficiency points of error by neglecting to file the appropriate motions during and after trial.

Hoback's assertion conflicts with the record. The record shows Hoback's counsel timely filed a motion for new trial on his behalf challenging both the legal and factual sufficiency of the evidence. Moreover, in non-jury trials, it is not necessary to preserve in the trial court a complaint about the legal and/or factual sufficiency of the evidence because such a complaint may be raised for the first time on appeal. *See* TEX. R. APP. P. 33.1(d). Thus, Hoback was not barred from challenging the legal and factual sufficiency of the evidence in this appeal, and counsel was not ineffective in this regard.

## C. Request for Jury Trial [1]

1. In a supplemental brief filed after submission and oral argument, Hoback further argues counsel was ineffective in failing to move for a continuance on the grounds of lack of forty-five days notice for trial. Hoback contends he did not receive forty-five days notice of the March 15, 2004 trial setting pursuant to Texas Rule of Civil Procedure 245. *See* TEX. R. CIV. P. 245 (providing the trial court "may set contested cases on written request of any party, or on the court's own motion, with reasonable notice of not less than forty five days to the parties of a first setting for trial, or by agreement of the parties; provided, however, that when a case previously has been set for trial, the Court may reset said contested case to a later date on any reasonable notice to the parties or by agreement of the parties."). The record shows that on September 30, 2003, the trial court signed an "initial permanency hearing" order notifying the parties the case was set for trial on March 16, 2004. The trial court later signed a "subsequent permanency hearing order" on January 20, 2004, again notifying the parties the case was set for trial on March 16, 2004. However, the trial actually took place a day earlier, on March 15, 2004. It is unclear from the record when the date for trial was changed from March 16 to March 15. A motion for withdrawal of counsel filed by Hoback's attorney on March 5, 2004 references a March 15 trial setting. In addition, at the conclusion of a March 9, 2004 pretrial hearing, the trial court announced the bench trial would proceed March 15, 2004. The record does not show any party objected to the March 15, 2004 trial setting.

Where the record is silent regarding counsel's strategy or tactics, we will not speculate as to the basis for counsel's decision. *See Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim.App.1994). Without evidence of the

■ Hoback next argues he was denied effective assistance of counsel because neither his first or second appointed trial counsel, who represented both Hoback and Kite, requested a jury trial on *his* behalf.[2] Hoback contends it is fair to assume most people in his situation would assume that the right to trial by jury is fundamental and automatic.

The Family Code provides for trial by jury upon request. *See* TEX. FAM. CODE ANN. § 105.002 (Vernon Supp. 2005). Unlike in criminal cases, the Family Code does not require an express waiver of trial by jury. *See* TEX. CODE CRIM. PROC. ANN. art. 1.13 (Vernon 2005). Under Texas Rule of Civil Procedure 216, to make a proper request for a jury trial, a party must make a written request for a jury trial and pay the jury fee at least thirty days before the date trial is set. *See* TEX. R. CIV. P. 216 ("No jury trial shall be had in any civil suit, unless a written request for a jury trial is filed with the clerk of the court a reasonable time before the date set for trial of the cause on the non jury docket, but not less than thirty days in advance."); *In re V.R.W.*, 41 S.W.3d 183, 194 (Tex.App.-Houston [14th Dist.] 2001, no pet.) ("In civil cases, the right of a jury trial is not automatic, but, rather, arises only where a party has demanded it and paid the applicable jury fee."). When a party has perfected its right to a jury trial in accordance with Rule 216 but the trial court proceeds to trial without a jury, the party must, to preserve error, either object on the record to the trial court's action or indicate affir-

matively in the record it intends to stand on its perfected right to a jury trial. *Sunwest Reliance Acquisitions Group, Inc. v. Provident Nat'l Assur. Co.*, 875 S.W.2d 385, 387–88 (Tex.App.-Dallas 1993, no writ). A refusal to grant a trial by jury is harmless error where the record reflects that no material issues of fact exist and an instructed verdict would have been justified. *Halsell v. Dehoyos*, 810 S.W.2d 371, 372 (Tex.1991).

The record shows Kite and Hoback's *first* appointed trial counsel filed an original answer on their behalf on January 20, 2004, but she did not file a request for a jury trial. When Kite and Hoback's first appointed counsel later withdrew from representation, the trial court appointed a second attorney to represent Kite and Hoback. The reporter's record shows that at a hearing on March 9, 2004, Kite and Hoback's second appointed trial counsel renewed an earlier oral request for a jury trial which the trial court had denied at a prior hearing (there is no record of the prior hearing). In accordance with counsel's previous *oral* request for a jury trial, counsel stated at the March 9 hearing she was submitting a *written* request for a jury trial. The only written request for a jury trial in the record was filed on February 27, 2003, on *Kite's* behalf, and the request was untimely because it was filed less than thirty days before trial. *See* TEX. R. CIV. P. 216. Second appointed trial counsel did not make a request for a jury trial on Hoback's behalf.

On the first day of trial, March 15, 2004, second appointed counsel for Hoback and

strategy and methods involved concerning counsel's actions at trial, the court will presume sound trial strategy. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex.Crim.App.1999). Hoback has not made the required showing of either deficient performance or sufficient prejudice with regard to this ineffectiveness claim. *See id.*

2. Second appointed trial counsel *untimely* filed a jury trial request on *Kite's* behalf, not his. The trial court denied Kite's request for a jury trial due to the untimeliness of the request, as it was made less than thirty days before trial.

Kite made an oral motion to sever the two trials between Kite and Hoback. The trial court denied the oral motion to sever. Counsel did not object to proceeding without a jury.

Hoback argues counsel's failure to timely request a jury trial on his behalf constitutes ineffective assistance. Hoback relies on *In re J.C.*, 108 S.W.3d 914, 916–17 (Tex.App.-Texarkana 2003, no pet.) as authority for his contention that counsel was ineffective by not requesting a jury trial on his behalf; however, *In re J.C.*, also a parental-rights termination case, is distinguishable from the facts of this case. The record in *In re J.C.* showed the father informed his court-appointed counsel, who was appointed eleven days before trial, of his desire for a jury trial at the first available opportunity, two days before trial was set to begin. *Id.* at 916. The father's counsel filed a written request for a jury trial, but the trial court denied the request because it was untimely. *Id.* The court of appeals held the trial court erred in denying the jury request even though it was untimely because counsel filed the request for jury trial on behalf of the father at his first opportunity. *Id.* at 917. Unlike *In re J.C.*, the record in this case does not show Hoback informed counsel of his desire to have a jury trial, no request for a jury trial was made, and we may only speculate as to why counsel did not file a jury request on Hoback's behalf. Furthermore, even if a request had been made on Hoback's behalf, the record reflects no material issues of fact existed and an instructed verdict would have been justified. *See id.* (holding error in denial of request for jury trial harmful where father testified extensively at the final hearing and repeatedly denied that termination of his parental rights would be in the best interests of his children; father's testimony was sufficient to defeat any motion for an instructed verdict).

We may not reverse for ineffective assistance "when counsel's actions or omissions may have been based upon tactical decisions, but the record contains no specific explanation for counsel's decisions." *Bone v. State*, 77 S.W.3d 828, 830 (Tex.Crim. App.2002). The record here does not provide an explanation for trial counsel's failure to file a jury request. Because there is no explanation in the record for counsel's actions, which could have been tactical, there has been no showing defeating the presumption counsel provided effective assistance. Moreover, Hoback has not shown counsel's failure to request a jury trial prejudiced his defense. Accordingly, the failure of counsel in this case to file a timely request for a jury trial does not constitute ineffective assistance of counsel.

## D. Lack of Discovery

■ Hoback next argues ineffective assistance of counsel is shown by trial counsel not filing any motions for discovery or motions for disclosure in this case. Hoback claims responses to the discovery may have disclosed whether a conflict of interest arose from trial counsel's dual representation of both Hoback and Kite.

On appeal, Hoback does not cite any authority in support of this contention. Hoback also has not shown evidence of anything his trial counsel failed to discover, and he does not explain how formal discovery would have disclosed a conflict or how it might have benefitted him. Moreover, the record does not reveal whether informal discovery by counsel had been conducted, and there is no showing in the record that discovery directed to CPS would have factually changed any of the proof at trial.

Hoback's complaint is not firmly founded in the record; we may only speculate why counsel did not conduct formal discov-

ery and what such discovery may have revealed. Hoback has failed to show counsel's performance was deficient in this regard and that the deficient performance prejudiced his defense.

### E. Record of Pretrial Hearings

■ Hoback next complains counsel was ineffective in not having three pre-trial hearings transcribed. He asserts the record does not indicate an agreement by the parties that no record be made of three pretrial hearings held on January 20, 2004, February 10, 2004, and March 3, 2004. Hoback claims he was harmed by counsel's failure to have a record made of the hearings on these dates because he now has no evidence of any mistakes trial counsel may have made; he argues that because he cannot show harm, he was harmed.

Texas Rule of Appellate Procedure 13.1(a) requires a court reporter to attend court sessions and make a full record of the proceedings, "unless excused by agreement of the parties." TEX. R. APP. P. 13.1(a). Here, the record does not show the parties agreed to the absence of the court reporter, but the record also does not show either party objected to the court reporter's absence. Thus, the record does not show whether the parties may have agreed not to have a record made of the three pretrial hearings.

We may only consider the record presented to us, and we cannot speculate on what might or might not be in the missing portions of the record. *See In re M.S.*, 115 S.W.3d at 546. In addition to the bench trial, two pretrial hearings, held on February 24, 2004 and March 9, 2004, were recorded and included in the appellate record. Additionally, the April 27, 2004 hearing on Kite's and Hoback's motions for new trial was recorded and is part of the record. With regard to the three hearings appellant specifically complains of lacking a record, the court's docket sheet reflects a permanency hearing was held on January 20, 2004; there is no notation on the docket sheet regarding February 10, 2004; and a notation dated March 3, 2004 states "Moorhead's [(Hoback's and Kite's second appointed counsel)] motions denied."

Hoback argues that if a record had been made of the January 20, 2004 permanency hearing, the "errors that would have been recorded would have been the evidence that Kite and Hoback were separated and each of their plans which was evidence of a conflict in representation" and "evidence as to whether CPS was planning to move for permanent managing conservatorship instead of termination." Hoback does not explain how the couple's separation creates a conflict of interest, and his other arguments as to what would have been recorded if a record had been made are not firmly founded in the record. We may not speculate as to what may have occurred during the January 20, February 10, and March 3 pretrial hearings and why the hearings were not transcribed. *See In re M.S.*, 115 S.W.3d at 546 (stating appellate court "may only consider the record presented to it, and ... cannot speculate on what might or might not be in the missing portions of the record.").

Hoback has not shown counsel's performance in not ensuring the three pretrial hearings were recorded was deficient and that the deficient performance prejudiced his defense. *See In re M.S.*, 115 S.W.3d at 546. Thus, counsel's failure in this case to ensure the entire proceedings were recorded does not constitute ineffective assistance of counsel.

### F. Dual Representation

■ Hoback argues counsel was ineffective due to an alleged conflict in counsel's dual representation of both Hoback and Kite. Hoback asserts the interests of Kite

and Hoback diverged because the evidence at trial showed Kite had requested permanent managing conservatorship be granted to the foster family currently taking care of K.M.H. or that the child be placed with relatives. Hoback further asserts counsel's ineffectiveness is shown by the following: (1) Hoback's first trial counsel filed a counterpetition only on Kite's behalf; (2) Hoback's second trial counsel filed three pretrial motions, a motion to extend final order date, a motion for mediation, and a request for jury trial, only on Kite's behalf; (3) second trial counsel stated during a March 9 hearing that she did not know she represented Hoback;[3] and (4) second trial counsel failed to explain to the trial court why she needed to withdraw from representation of Hoback at the March 9 pretrial hearing and on March 15, the first day of trial.

On March 5, 2004,[4] Hoback's second trial counsel filed a motion to withdraw as counsel for Hoback, listing the following grounds for withdrawal: Kite and Hoback were no longer in a romantic relationship with each other, they no longer lived together, the frequency of their participation in the services provided by CPS was not the same, and they had differences in how this case should be resolved. In addition, the motion to withdraw alleged Hoback or Kite might blame the other for conduct related to the termination and might be willing or able to separate and remain separate from the other party.

Section 107.013(b) of the Texas Family Code provides that indigent parents who are defendants in the same ter-

mination lawsuit are entitled to non-conflicted counsel. TEX. FAM. CODE ANN. § 107.013(b) (Vernon Supp.2005). In deciding whether there is a conflict of interest between parents opposing termination in a single lawsuit, the trial court must determine whether there is a substantial risk that counsel's obligations to one parent would materially and adversely affect his or her obligations to the other parent. *In re B.L.D.*, 113 S.W.3d 340, 343 (Tex. 2003). In evaluating whether there is a substantial risk of a conflict of interest before trial, the trial court should consider the available record to determine the likelihood that the parents' positions will be adverse to each other. *Id.* at 347. For example, when reviewing a record of pretrial proceedings, the trial court may consider the allegations in the petition against each parent, evidence adduced during pretrial hearings, and the parents' statements and positions taken in the course of pretrial proceedings. A trial court's determination of whether there was a conflict of interest is reviewed for an abuse of discretion. *Id.*

Hoback argues ineffectiveness is shown by trial counsel's failure to file pre-trial motions on his behalf and her failure to explain to the trial court why she needed to withdraw from representation of Hoback at the March 9 pre-trial hearing and on March 15, the first day of trial.

A review of the pre-trial record in this case shows no substantial risk that trial counsel's obligations to Kite would materially and adversely affect her representation of Hoback. The petition for termi-

---

3. The record shows that on March 5, counsel filed a motion to withdraw as counsel for Hoback; thus, her statement at the March 9, 2003 hearing that she was unaware she represented Hoback conflicts with the fact she filed a motion to withdraw from representation of Hoback four days earlier.

4. On February 10, 2004, the trial court permitted Hoback and Kite's first appointed trial counsel, M. Lesa Trombley, to withdraw as counsel of record, and Mirenda Moorhead was appointed counsel of record for Hoback and Kite.

nation alleged grounds of endangerment against both Hoback and Kite. The allegations permitted termination based not only on each parent's own conduct endangering K.M.H., but upon each parent's knowing exposure of K.M.H. to the other parent's endangering conduct. *See* TEX. FAM. CODE ANN. § 161.001(1)(E) (Vernon 2002). Consequently, evidence regarding Hoback's conduct could tend to prove the grounds supporting Kite's termination, and vice versa. *See In re B.L.D.*, 113 S.W.3d at 347.

In her counterpetition, filed January 20, 2004, Kite alleged she and Hoback "are or will be separated" and the "appointment of the parents as joint managing conservators would not be in the best interest of the child." Kite further alleged that it would be in the best interest of the child that she be appointed sole managing conservator of the child. On January 20, counsel filed a joint original answer on behalf of both Hoback and Kite wherein both parents entered a general denial.

Hoback has not shown his and Kite's interests conflicted to create a substantial risk that counsel could not effectively represent each of them in the same trial. Other than the general statement in trial counsel's motion to withdraw that Hoback and Kite had differences in how this case should be resolved, there is no evidence in the record showing Hoback's interests were adverse to Kite's and no evidence of an actual conflict. Moreover, even if we were to assume counsel was deficient in these regards, Hoback has not shown counsel's errors were so serious as to deprive him of a fair trial.

Therefore, based on the record before us, we conclude appointed counsel's obligations to Kite did not materially and adversely effect counsel's obligations to Hoback, and counsel's dual representation did not constitute ineffective assistance.

### G. Hoback's Presence at Trial

Lastly, Hoback complains trial counsel was ineffective in failing to make arrangements for him to be present at trial. On the date of trial, Hoback was in boot camp in San Antonio. Hoback argues trial counsel's failure to request a bench warrant resulted in the trial court being unable to consider whether Hoback was entitled to be present at trial.

Hoback concedes an inmate does not have an absolute right to appear in person in every court proceeding. *See In re Z.L.T.*, 124 S.W.3d 163, 165 (Tex.2003) (stating "an inmate does not have an absolute right to appear in person in every court proceeding"). Instead, an inmate's access to the courts is weighed against the protection of our correctional system's integrity. *Id.* at 166 (holding trial court did not abuse its discretion in overruling pro se inmate's request for a bench warrant because the inmate failed to provide any factual information showing why his interest in appearing outweighed the impact on the correctional system). Court's consider a variety of factors when deciding whether to grant an inmate's request for a bench warrant, including: the cost and inconvenience of transporting the inmate to court; the security risk the inmate presents to the court and public; whether the inmate's claims are substantial; whether the matter's resolution can reasonably be delayed until the inmate's release; whether the inmate can and will offer admissible, noncumulative testimony that cannot be effectively presented by deposition, telephone, or some other means; whether the inmate's presence is important in judging his demeanor and credibility; whether the trial is to the court or a jury; and the inmate's probability of success on the merits. *Id.* at 165–66. The key factor is whether the inmate is represented by counsel. *Armstrong v. Randle*, 881

S.W.2d 53, 57 (Tex.App.-Texarkana 1994, writ denied).

■ Here, Hoback was represented by counsel, and he has not shown he was denied an opportunity to communicate with counsel. Hoback also has not shown the substance of any testimony he would have given, or how such testimony would have affected the trial court's decision.[5] *See Armstrong*, 881 S.W.2d at 58; *see also Melancon v. State*, 66 S.W.3d 375, 379 (Tex.App. -Houston [14th Dist.] 2002, pet. ref'd) (stating that without a record reflecting what facts, if any, witness could have actually provided, prejudice from counsel's failure to subpoena the witness was not shown by trial counsel's global and unsubstantiated characterizations that the witness, to an extent, corroborated other testimony, or that the witness' testimony would have helped the defense).

There is no explanation in the record for counsel's actions in not requesting a bench warrant, which could have been tactical. Thus, there has been no showing defeating the presumption counsel provided effective assistance. Additionally, Hoback has not shown counsel's failure to request a bench warrant prejudiced his defense. We conclude counsel's failure to request a bench warrant did not constitute ineffective assistance.

We overrule point of error three.

## CONCLUSION

We have carefully studied Hoback's brief and the record and it has not been demonstrated to us that, but for the alleged errors of trial counsel, the result of the proceeding would have been different. CPS provided a solid case for the termination of Hoback's parental rights.

Hoback has not shown that his trial counsel's representation was deficient; that is, it fell below an objective standard of reasonableness based on prevailing professional norms. *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052. Hoback also has not shown that counsel's alleged deficient performance prejudiced his defense. *Id.*

The judgment of the trial court is affirmed.

YATES, J., concurs and files a concurring opinion in which HUDSON, J. joins.

LESLIE BROCK YATES, Justice, concurring.

I agree with the majority's conclusion that Hoback failed to prove ineffective assistance of counsel in this case. However, I write separately to express my disagreement with the majority's analysis in reaching that conclusion.

## Request for Jury Trial

■ The majority simply states that Hoback's second appointed trial counsel did not request a jury on his behalf. I do not think it is clear that no such request was made. The record shows that on Feb-

---

**5.** Hoback argues in a supplemental brief filed after both submission of the case and oral argument that counsel was ineffective in not having him testify at the hearing on his motion for new trial. Hoback's counsel argued at the motion for new trial hearing that appellant "is available for a hearing," but she did not state he was present in the courtroom and there is no record of what Hoback would have said. No evidence was introduced during the hearing. We may only speculate why counsel did not call him to testify at the hearing, whether he was present or not; her reasons may have been strategic. When the record is silent as to possible trial strategies undertaken by defense counsel, we will not speculate on the reasons for those strategies. *See Jackson v. State*, 877 S.W.2d 768, 771 (Tex.Crim.App.1994). Here, the record is not sufficiently developed to overcome the strong presumption that counsel provided reasonable assistance.

ruary 10, 2004, the trial court signed an order appointing new counsel for both Hoback and Kite. Apparently, new counsel was confused, thinking she represented only Kite, and filed a written jury request on her behalf only on February 27, 2004. At a pretrial hearing on March 9, 2004, counsel renewed her "earlier" request for a jury trial. The court clarified that counsel in fact represented both parents and then denied all her various motions, including the jury request, and the termination hearing was held on March 15, 2004. Given that the trial court denied counsel's oral motions after clarifying that she represented both parties, the record could be interpreted that the trial court considered counsel's request as applying to both parties.

"The right to jury trial is one of our most precious rights, holding 'a sacred place in English and American history.'" *Gen. Motors Corp. v. Gayle*, 951 S.W.2d 469, 476 (Tex.1997) (orig.proceeding) (quoting *White v. White*, 108 Tex. 570, 196 S.W. 508, 512 (1917)). Restrictions placed on that right will be subjected to the utmost scrutiny. *In re J.C.*, 108 S.W.3d 914, 917 (Tex.App.Texarkana 2003, no pet.). Given the ambiguous circumstances and the importance of the right to a jury trial, I would find that counsel did in fact request a jury for Hoback, albeit untimely.

Though whether to try a case to a judge or jury is a strategic choice, once the decision is made to request a jury, it should be done timely. Making an untimely jury demand is not a reasonable strategic choice. *Cf. Batiste v. State*, 834 S.W.2d 460, 466 (Tex.App.-Houston [14th Dist.] 1992) (finding trial counsel's performance deficient because he did not raise his *Batson* challenge timely), *aff'd*, 888 S.W.2d 9

(Tex.Crim.App.1994). Thus, I would conclude that, because her jury request was untimely, her performance was deficient under the first prong of *Strickland*. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *In re M.S.*, 115 S.W.3d 534, 545 (Tex.2003).

Having found deficient performance, I would next analyze whether Hoback was harmed by the deficiency. *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052; *In re M.S.*, 115 S.W.3d at 545; *see also Johnson v. State*, 169 S.W.3d 223, 230 (Tex.Crim.App.2005) (holding that *Strickland* harm analysis applies to all misconduct claims flowing from conduct of defense counsel unless claims involve a complete denial of counsel, a conflict of interest, or a structural defect[1]). The majority states that Hoback was not harmed because "the record reflects no material issues of fact existed and an instructed verdict would have been justified." While that is the harm standard for denial of a jury trial in a typical civil case, *see Halsell v. Dehoyos*, 810 S.W.2d 371, 372 (Tex. 1991), I disagree that we should apply that standard to a claim alleging ineffective assistance of counsel based on an untimely jury request in a case involving the termination of parental rights. The parent-child relationship is one of constitutional dimension, and a termination decree is complete, final, and irrevocable. *In re V.R.W.*, 41 S.W.3d 183, 189–90 (Tex.App.-Houston [14th Dist.] 2001, no pet.). Parental rights termination cases involve inherent discretion by the fact finder to decide, even if all acts alleged in support of the termination are true, whether termination is in the best interest of the child at that point in time. Rather, I would

---

1. The Court of Criminal Appeals has held that structural defects are only those so labeled by the United States Supreme Court, which does not include the errors at issue in this case. *See Johnson*, 169 S.W.3d at 235; *Gray v. State*, 159 S.W.3d 95, 96–97 (Tex.Crim.App. 2005).

apply the typical ineffective assistance of counsel standard and find harm if the deficient performance undermined confidence in the outcome of the proceeding. *See Strickland,* 466 U.S. at 694, 104 S.Ct. 2052; *see also In re B.W.,* No. 14–03–00068–CV, 2004 WL 2749138, at *5 (Tex. App.-Houston [14th Dist.] Dec. 2, 2004, pet. denied) (mem.op.) (applying *Strickland* harm standard to ineffective assistance of counsel claim based on failure to request a jury in a parental termination case).

Even under this standard, I would conclude that Hoback has not shown harm. He does not explain how he was prejudiced by the failure to request a jury, stating only that "Hoback should not have been terminated without the benefit of a jury trial." That is insufficient to undermine confidence in the outcome of the proceeding. Thus, I agree with the majority's ultimate conclusion that Hoback has not shown ineffective assistance of counsel based on counsel's untimely request for a jury trial.

### Presence at Trial

The majority analyzes an inmate's right to appear at a termination hearing under the typical standard for granting or denying a request for a bench warrant. I believe this standard does not adequately protect the rights of the parent and thus does not apply in the termination context.[2] Termination is a serious proceeding, and a parent's presence, or lack thereof, can be quite significant, especially for an incarcerated parent. As the Texarkana Court of Appeals has explained,

> The absence of a parent at the trial to terminate his or her parental rights is prejudicial to the parent. The parent's absence could leave the fact-finder with the impression that the proceeding is not important to the parent. Furthermore, because of the obvious negative connotations associated with a parent who is incarcerated, it is important for the fact-finder to witness the demeanor and credibility of the parent. In short, the presence, or nonpresence, of the parent in the courtroom at his or her termination hearing is vital to the fact-finder's decision to terminate a parent's rights to his or her child.

*In re J.D.S.,* 111 S.W.3d 324, 327 (Tex. App.-Texarkana 2003, no pet.). Thus, I believe that, absent extraordinary circumstances, any request on behalf of an incarcerated parent to be present at a termination hearing should be granted.

Despite the importance of a parent's presence at a termination hearing, a strategic choice not to appear is possible. In the motion for new trial hearing, Hoback's counsel seemed to imply that her failure to secure Hoback's presence was an oversight or mistake. However, CPS pointed out that the record actually was silent on whether this was a tactical decision, and Hoback's counsel did not put on any evidence to the contrary or respond to that argument in any way, though having the opportunity to do so. At best, the record conflicts regarding whether the failure to request a bench warrant was strategy or mistake, and in reviewing allegations of ineffective assistance of counsel, we presume competent performance. *In re M.S.,* 115 S.W.3d at 545. Because the record here is insufficient to overcome the presumption of competence, I agree that Hoback cannot show ineffective assistance of counsel based on the failure to secure his presence at the termination hearing.

**2.** The case the majority relies upon, *In re Z.L.T.,* 124 S.W.3d 163 (Tex.2003), involves a petition to establish paternity rather than the termination of parental rights.

LESLIE BROCK YATES, Justice, supplemental opinion on motion for rehearing.

In our original opinion, we concluded that Hoback's counsel had waived Hoback's first two issues at oral argument. Hoback's counsel then filed a motion for rehearing, stating that she did not intentionally waive these issues and intended only to waive oral argument and have the court rely on her brief. Rule 47.1 of the Texas Rules of Appellate Procedure provides that we *"must . . .* address[ ] every issue raised and necessary to the final disposition of the appeal." TEX.R.APP. P. 47.1 (emphasis added). If it is unclear whether a party has waived an issue at oral argument, we should address it. *See CSR Ltd. v. Link*, 925 S.W.2d 591, 595 n. 1 (Tex.1996) ("The plaintiffs claim that CSR waived the right to contest personal jurisdiction in Texas because of admissions CSR allegedly made before the West Virginia Supreme Court during unrecorded oral argument. CSR disputes that contention. Because there is a dispute about what was said, we do not find a judicial admission that knowingly waives a constitutional right under these circumstances." (citation omitted)); *Mosley v. State*, 931 S.W.2d 670, 675 n. 2 (Tex.App.-Houston [14th Dist.] 1996, pet. ref'd) (addressing a contention because "it was unclear whether the state was waiving the contention entirely or if it was simply not going to orally argue the contention"). Given that the argument was unrecorded, the two issues were fully briefed, and counsel disputes any intent to waive, we have granted rehearing to consider Hoback's other two issues.

In his first issue, Hoback contends the trial court erred in denying his request for a jury trial. In reviewing Hoback's claim that his counsel was ineffective in failing to make a timely jury demand, the majority and concurrence disagreed as to whether Hoback's counsel actually requested a jury trial. However, even if there was a proper jury request, Hoback waived any error because he failed to object when the trial court proceeded with a bench trial. *See In re D.R.*, 177 S.W.3d 574, 580 (Tex.App.-Houston [1st Dist.] 2005, pet. filed) ("[A] perfected right to a jury trial in a civil case may be waived by a party's failure to act when the trial court proceeds with a bench trial."); *Trimble v. Tex. Dep't of Protective & Regulatory Servs.*, 981 S.W.2d 211, 220 (Tex.App.-Houston [14th Dist.] 1998, no pet.) (finding that failure to object waived complaint of no jury trial, even when properly requested and paid). We therefore overrule Hoback's first issue.

In his second issue, Hoback complains the trial court erred in denying counsel's request to withdraw from representation of one of the parties based on a conflict of interest. In determining whether a conflict of interest exists between parents in a termination suit, the trial court must decide "whether there is a substantial risk that the appointed counsel's obligations to one parent would materially and adversely affect his or her obligations to the other parent." *In re B.L.D.*, 113 S.W.3d 340, 343 (Tex.2003). We review a trial court's determination of whether there was a conflict of interest for an abuse of discretion. *Id.* at 347. In reviewing Hoback's ineffective assistance of counsel claim based on this alleged conflict of interest, we determined that the record in this case shows no substantial risk that counsel's obligations to Kite would materially and adversely affect her representation of Hoback. Accordingly, we find the trial court did not abuse its discretion in denying counsel's request to withdraw. Hoback's second issue is overruled.

Having overruled the remainder of Hoback's issues, the judgment of the trial court is affirmed.

ANDERSON, J. would deny motion for rehearing.