

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-22-00016-CV

_____

IN THE INTEREST OF J.J. AND L.J., CHILDREN

On Appeal from the 102nd District Court
Bowie County, Texas
Trial Court No. 20C1329-102

Before Morriss, C.J., Stevens and van Cleef, JJ.
Opinion by Justice van Cleef

# OPINION

Father appeals the termination of his parental rights to his children, seven-year-old J.J. and four-year-old L.J.[1] In his sole point of error on appeal, Father argues that his counsel rendered ineffective assistance arising from an alleged conflict of interest due to counsel's prior representation of Mother, who signed a voluntary affidavit of relinquishment as to J.J. and L.J. Because we conclude that Father has neither shown that counsel's assistance was deficient nor that he was prejudiced by any alleged deficiency, we overrule Father's ineffective assistance claim and affirm the trial court's judgment.

## I.      Factual and Procedural Background

The Texas Department of Family and Protective Services petitioned to terminate Mother's and Father's parental rights, alleging the same grounds against both parents. In a suit filed by the Department "in which termination of the parent-child relationship or the appointment of a conservator for a child is requested, the court shall appoint an attorney ad litem to represent the interests of . . . an indigent parent of the child who responds in opposition to the termination or appointment." TEX. FAM. CODE ANN. § 107.013(a)(1). The record demonstrates that Mother and Father, who were in a relationship and sought the return of their children, were indigent and initially appointed the same counsel to represent them.

In several pretrial hearings, the Department questioned counsel's joint representation. During a March 4, 2021, hearing, the Department asked the trial court whether the same attorney was permitted to represent both Mother and Father. The trial court reasoned that appointment of

---

[1]To protect the children's identity, we refer to them by their initials and to their parents as Mother and Father. *See* TEX. R. APP. P. 9.8.

2

separate counsel was not required because Mother and Father were "rowing the same boat" and received their counsel's assurance that he would inform the trial court of any conflict of interest, should it arise. At a review hearing held on August 25, the Department informed the trial court of its belief that Mother and Father were no longer together. Their counsel said he was not sure if the break-up was permanent, believed it may have occurred based on an agreement to get Mother, who was a drug-addict, "some help," and said he would have to inquire whether Mother and Father were still "on the same page" before deciding whether he could continue representing them both.

Soon, counsel became aware of a potential conflict of interest. In September, counsel informed the trial court that Mother and Father had made a permanent split. As a result, the trial court appointed another attorney to represent Mother. After Mother's new counsel was appointed, Mother decided to voluntarily relinquish her parental rights to J.J. and L.J. instead of seeking their return.

At trial, Father, who wished for J.J. and L.J. to be returned to his care, admitted that he had used methamphetamine daily and that the children were removed from him because J.J. tested positive for methamphetamine and L.J. tested positive for marihuana. Father testified that he was "an addict and an alcoholic," did "terrible things to [himself] and to [his] family," had "continuously failed to be a good parent," and had allowed the children to be with Mother, who was also a drug addict. Father also acknowledged that he was on deferred adjudication community supervision for the offense of abandoning or endangering a child. Chantel Finley, the Department's caseworker, testified that the trial court had ordered Father to participate in a

3

family service plan, but Father had failed to complete all required counseling sessions[2] and had not maintained full employment.

After hearing this evidence, the trial court terminated Father's parental rights to J.J. and L.J. Specifically, the trial court found that he (1) knowingly placed or knowingly allowed the children to remain in conditions or surroundings that endangered their physical or emotional well-being, (2) engaged in conduct or knowingly placed the children with others who engaged in conduct that endangered the children's physical or emotional well-being, (3) was placed on deferred adjudication community supervision for being criminally responsible for the serious injury of a child for conduct constituting the offense of abandoning or endangering a child, and (4) failed to comply with provisions of a court order that established the actions Father was required to complete to obtain the children's return. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (L), (O). The trial court also found that termination of Father's parental rights was in the children's best interests. *See* TEX. FAM. CODE ANN. § 161.001(b)(2).

## II. Standard of Review

In his sole point of error, Father argues that his counsel rendered ineffective assistance. "[A]ll parents appearing in opposition to state-initiated parental-rights termination suits" are entitled to "the right to *effective* counsel regardless of whether counsel is appointed or retained." *In re D.T.*, 625 S.W.3d 62, 71 (Tex. 2021). "Ineffective-assistance-of-counsel claims in parental-[rights] termination cases, as in criminal cases, are governed by the United States Supreme Court's two-prong test articulated in *Strickland v. Washington*[, 466 U.S. 668, 687

---

[2]Donald Eugene Winstead, III, Father's psychologist, testified that Father needed additional counseling before he could be considered capable of providing for the children's physical and emotional needs.

4

(1984)]." *Id.* at 73 (citing *In re M.S.*, 115 S.W.3d 544, 544–45 (Tex. 2003)). "First, the [appellant] must show that counsel's performance was deficient[,] [which] . . . requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* (quoting *Strickland*, 466 U.S. at 687). "Second, the [appellant] must show that the deficient performance prejudiced the defense[,] [which] . . . requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* (quoting *Strickland*, 466 U.S. at 687). "A party claiming ineffective assistance of counsel must satisfy both prongs of the *Strickland* test to succeed." *Id.* (citing *In re M.S.*, 115 S.W.3d at 545); *see In re K.M.H.*, 181 S.W.3d 1, 12 (Tex. App.—Houston [14th Dist.] 2005, no pet.), (finding that the second *Strickland* prong is required for ineffective assistance claims based on conflict of interest in parental-rights termination cases)).[3]

"Allegations of ineffectiveness 'must "be firmly founded in the record."'" *Lampkin v. State*, 470 S.W.3d 876, 897 (Tex. App.—Texarkana 2015, pet. ref'd) (quoting *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2003) (quoting *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999))). "The standard of review is much more deferential to trial counsel's actions when the claim is asserted for the first time on direct appeal because '[t]he reasonableness of counsel's choices often involves facts that do not appear in the appellate record,' and because 'trial counsel should ordinarily be afforded an opportunity to explain his actions before being

---

[3]Father argues, based on an opinion penned by our sister court in a criminal case, that he is not required to show prejudice under *Strickland*'s second prong. *See Johnson v. State*, 583 S.W.3d 300, 311 (Tex. App.—Fort Worth 2019, pet. ref'd) (per curiam) (mem. op.). This body of caselaw deals with exceptions to the second prong in the context of counsel's dual representation of codefendants or multiple defendants tried separately for the same offense and does not apply here. *See id.*; *Mickens v. Taylor*, 535 U.S. 162, 166–74 (2002). Moreover, the Texas Supreme Court has not created an exception to the requirement of a parent to show prejudice under *Strickland*'s second prong in the context of an alleged conflict of interest in a parental-rights termination case.

denounced as ineffective.'" *Id.* at 898 n.10 (quoting *Rylander v. State*, 101 S.W.3d 107, 110–11 (Tex. Crim. App. 2003) (quoting *Bone*, 77 S.W.3d at 836). "When a claim of ineffective assistance of counsel is raised for the first time on direct appeal, the record 'is in almost all cases inadequate to show that counsel's conduct fell below an objectively reasonable standard of performance.'" *Id.* at 898 (quoting *Andrews v. State*, 159 S.W.3d 98, 102 (Tex. Crim. App. 2005)).

### III. The Record Fails to Establish the First *Strickland* Prong

"In examining counsel's performance under the first prong, 'we must take into account all of the circumstances surrounding the case, and must primarily focus on whether counsel performed in a "reasonably effective" manner.'" *In re D.T.*, 625 S.W.3d at 73–74 (quoting *In re M.S.*, 115 S.W.3d at 545 (quoting *Strickland*, 466 U.S. at 687)). "Counsel's performance falls below acceptable levels only when the 'representation is so grossly deficient as to render proceedings fundamentally unfair.'" *Id.* at 74 (quoting *In re M.S.*, 115 S.W.3d at 545 (quoting *Brewer v. State*, 649 S.W.2d 628, 630 (Tex. Crim. App. 1983))). "We give great deference to counsel's choices and indulge '"a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," including the possibility that counsel's actions are strategic.'" *Id.* (quoting *In re M.S.*, 115 S.W.3d at 545 (quoting *Strickland*, 466 U.S. at 689)).

Initially, we note that dual representation of parents is specifically allowed under the Texas Family Code. A trial court may appoint a single attorney to represent the interests of both parents who are entitled to appointed counsel if "the court finds that the interests of the parents are not in conflict and that there is no history or pattern of past or present family violence by one

6

parent directed against the other parent, a spouse, or a child of the parties." TEX. FAM. CODE ANN. § 107.013(b). "[I]n deciding whether there is a conflict of interest between parents opposing termination in a single lawsuit, the trial court must determine whether there is a substantial risk that the appointed counsel's obligations to one parent would materially and adversely affect his or her obligations to the other parent." *In re B.L.D.*, 113 S.W.3d 340, 342–43 (Tex. 2003). Because the trial court initially appointed the same counsel for Mother and Father, it determined that their interests were not in conflict, and that finding was not challenged.[4]

As soon as counsel became aware of a potential conflict, he withdrew from Mother's representation, and new counsel was appointed to Mother. Even so, Father argues that a conflict of interest prevented counsel's continued representation of him. "To support a finding that [Father's] trial counsel was ineffective, the trial record must affirmatively demonstrate his deficiency." *In re C.H.M.*, No. 06-19-00108-CV, 2020 WL 1221005, at *2 (Tex. App.—Texarkana Mar. 13, 2020, no pet.) (mem. op.) (quoting *In re J.M.A.E.W.*, No. 06-14-00087-CV, 2015 WL 1119761, at *3 (Tex. App.—Texarkana Mar. 13, 2015, no pet.) (mem. op.) (citing *Bermea v. Tex. Dep't of Family & Protective Servs.*, 265 S.W.3d 34, 43 (Tex. App.—Houston [1st Dist.] 2008, pet. denied))). "We will not speculate to find trial counsel ineffective when the record is silent on counsel's reasoning or strategy." *In re K.L.L.H.*, No. 06-09-00067-CV, 2010 WL 87043, at *6 (Tex. App.—Texarkana Jan. 12, 2010, pet. denied) (mem. op.) (citing *Robinson*

---

[4]*See In re S.J.*, No. 06-09-00043-CV, 2009 WL 2048078, at *2 (Tex. App.—Texarkana July 16, 2009, no pet.) (mem. op.) (citing *In re B.L.D.*, 113 S.W.3d at 344–45) (a challenge to dual representation under Section 107.013(b) must be preserved with the trial court before it can be raised on appeal).

*v. State*, 16 S.W.3d 808, 813 n.7 (Tex. Crim. App. 2000); *In re M.C.T.*, 250 S.W.3d 161, 172 (Tex. App.—Fort Worth 2008, no pet.)).  On a silent record like this one, we assume counsel's actions were "due to any strategic motivation that can be imagined." *Id.*  This is because "[t]he challenged conduct will constitute ineffective assistance only when 'the conduct was so outrageous that no competent attorney would have engaged in it.'" *In re D.T.*, 625 S.W.3d at 74 (quoting *In re M.S.*, 115 S.W.3d at 545 (quoting *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001))).

Father contends that his counsel labored under a conflict of interest created by his prior representation of Mother.  "Typically, courts look to the ethical rules promulgated by the State Bar to evaluate conflicts of interest in civil cases." *In re B.L.D.*, 113 S.W.3d at 346.  Father cites to Rule 1.09 of the Texas Disciplinary Rules of Professional Conduct which, among other things, prohibits "a lawyer who personally has formerly represented a client in a matter" from "represent[ing] another person in a matter adverse to the former client[5] . . . if the representation in reasonable probability will involve a violation of Rule 1.05; or . . . if it is the same or a substantially related matter," "[w]ithout prior consent."  TEX. DISCIPLINARY RULES PROF'L CONDUCT R.  1.09(a)(2)–(3).  Rule 1.05 prohibits a lawyer from revealing confidential information of a client or former client unless "the client consents after consultation."  TEX. DISCIPLINARY RULES PROF'L CONDUCT R.  1.05(c)(2).  Under both rules cited by Father, Mother's consent to counsel's continued representation of Father would have removed any

---

[5]This language "concerns the situation where a lawyer once personally represented a client and now wishes to represent a second client against that former client," TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 1.09, cmt. 2, a situation not present here.

8

potential conflict. Because the record is silent as to counsel's reasons, we may presume that his continued representation of Father was blessed by Mother.

We also find that counsel could have believed that he was not required to withdraw from Father's representation because there was no actual conflict of interest. "[U]ntil a defendant shows that his counsel *actively represented conflicting interests*, he has not established the constitutional predicate for his claim of ineffective assistance." *Acosta v. State*, 233 S.W.3d 349, 355 (Tex. Crim. App. 2007) (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980) (orig. proceeding)). The record shows that, even though Mother signed a voluntary affidavit of relinquishment, she still wished for Father to retain his parental rights. On this silent record, we may presume that counsel was aware of Mother's intention to relinquish her parental rights before she was appointed new counsel and that counsel determined that his withdrawal from Father's representation was unnecessary because Mother's and Father's interests were aligned since they both wished for Father to retain his parental rights.

Next, Father argues that there was a potential conflict because his counsel's representation "was likely to require 'shifting blame' upon Mother." As an example, Father argues that counsel should have questioned him at trial about problematic living conditions to establish that they were "primarily caused by Mother." Even assuming this fact were true, counsel could have determined that any blame shifting would have only harmed Father since it would have proved the Department's allegations that (1) he knowingly allowed the children to remain in conditions or surroundings that endangered their physical or emotional well-being and (2) he knowingly placed the children with Mother, who engaged in conduct that endangered their

9

physical or emotional well-being. In other words, counsel could have determined that Mother's and Father's interests remained aligned and that blame-shifting was not a reasonable trial strategy. *See In re K.M.H.*, 181 S.W.3d at 11 & 12 (where the Department's petition for termination is "based not only on each parent's own conduct endangering [a child], but upon each parent's knowing exposure of [a child] to the other parent's endangering conduct," there is "no substantial risk that trial counsel's obligations to [one parent] would materially and adversely affect [counsel's] representation of [the other parent]"); *see also Hurley v. State*, 606 S.W.2d 887, 890 (Tex. Crim. App. [Panel Op.] 1980) ("[a] common defense often gives strength against a common attack") (quoting *Holloway v. Arkansas*, 435 U.S. 475, 483 (1978)); *In re B.L.D.*, 113 S.W.3d at 347.

Based on the silent record before us, we conclude Father has failed to show that counsel's performance was deficient. As a result, we find that the record failed to establish the first *Strickland* prong.

## IV. The Record Fails to Establish the Second *Strickland* Prong

Under the second prong of the *Strickland* test, Father must show that his counsel's "grossly deficient" performance caused harm or prejudice, "render[ing the] proceedings fundamentally unfair." *In re K.L.L.H.*, 2010 WL 87043, at *8 (quoting *In re M.S.*, 115 S.W.3d at 545). "In other words, [Father] had to show 'there is a reasonable probability that, but for counsel's unprofessional error(s), the result of the proceeding would have been different."' *Id.*

10

(quoting *In re M.S.*, 115 S.W.3d at 550).[6]  "[T]o satisfy this prong, . . . conclusory statements of harm are not enough."  *In re L.G.D.*, No. 06-17-00061-CV, 2017 WL 4507673, at *3 (Tex. App.—Texarkana Oct. 10, 2017, pet. denied) (mem. op.).

Here, Father  makes no argument in his brief relevant to *Strickland*'s second prong, and we fail to see how Father was harmed by his counsel's continued representation.  "Only one predicate finding under Section 161.001[b](1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest."  *In re L.E.S.*, 471 S.W.3d 915, 923 (Tex. App.—Texarkana 2015, no pet.) (quoting *In re O.R.F.*, 417 S.W.3d 24, 37 (Tex. App.—Texarkana 2013, pet. denied)).  Father testified at trial that the children were removed because they tested positive for drugs, and he made several admissions about his drug use, parenting deficiencies, and placement on deferred adjudication community supervision for abandoning or endangering a child.  Thus, Father's own testimony established the Department's Grounds D, E, and L allegations and supported the trial court's best-interest findings.  In light of Father's testimony in this case, nothing shows that there was a reasonable probability that his parental rights would not have been terminated absent any alleged ineffective assistance by counsel.  Simply put, the second *Strickland* prong has not been met.

Because we find that Father has shown neither that counsel's assistance was deficient nor that he was prejudiced by any alleged deficiency, we overrule Father's sole point of error on appeal.

---

[6]"We conduct the review 'to determine harm as if . . . sufficiency had been preserved . . . understanding that the evidentiary burden in such cases is "clear and convincing."'"  *In re K.L.L.H.*, 2010 WL 87043, at *8 (quoting *In re M.S.*, 115 S.W.3d at 550).

## V.    Conclusion

We affirm the trial court's judgment.

                                        Charles van Cleef
                                        Justice

Date Submitted:        June 1, 2022
Date Decided:          June 2, 2022