

NUMBER 13-16-00240-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

## IN THE INTEREST OF J.P., A CHILD

**On appeal from the County Court at Law No. 5
of Nueces County, Texas.**

# MEMORANDUM OPINION

**Before Justices Garza, Perkes and Longoria
Memorandum Opinion by Justice Garza**

Appellant A.P. challenges the termination of her parental rights with respect to J.P., a minor child.[1]  By four issues, A.P. contends:  (1) the trial court violated her constitutional right to due process by accepting a waiver of jury trial; (2) the trial court violated her constitutional right to due process by proceeding with trial in her absence; (3) there was

---

[1] We refer to the child and his parents by their initials in accordance with rule of appellate procedure 9.8.  *See* TEX. R. APP. P. 9.8(b)(2) (providing that, in an appeal arising out of a case in which the termination of parental rights was at issue, "the court must, in its opinion, use an alias to refer to a minor, and if necessary to protect the minor's identity, to the minor's parent or other family member").

legally and factually insufficient evidence to support termination under family code section 161.003; and (4) the trial court violated her constitutional right to due process by not allowing her the opportunity to cross-examine a witness. We affirm.

## I. BACKGROUND

J.P. was born to A.P., his biological mother, and J.C., his biological father, on March 30, 2012. On June 17, 2014, the Texas Department of Family and Protective Services (the "Department") took custody of J.P. The following day, the Department filed a petition seeking termination of A.P.'s and J.C.'s parental rights under sections 161.001 and 161.003 of the Texas Family Code. *See* TEX. FAM. CODE ANN. §§ 161.001, 161.003 (West, Westlaw through 2015 R.S.).

At a pre-trial hearing on October 26, 2015, counsel for the Department stated that, although a jury trial had been set for November 2, 2015, the Department was waiving its jury demand. A.P.'s counsel stated that, though A.P. was not present at the pre-trial hearing, counsel hoped to be able to visit her "later this week" and that he thought he was "entitled to rely" on the Department's jury demand. A.P.'s counsel stated that A.P. "is apparently still at San Antonio State Hospital and is still legally incompetent, which makes it very difficult for me to waive any rights given that situation." The trial court then denied A.P.'s counsel's request for a bench warrant, explaining that A.P. would be entitled to appear by phone at trial. A.P.'s counsel further stated that "for the record, I have to announce not ready because [A.P. is] legally incompetent."

At the trial setting on November 2, 2015, A.P.'s counsel announced: "We're present. Ready. My client's ready. Previously, on the record, she waived jury trial. We're ready, Your Honor." Counsel for the Department called Laura Morrison as a witness and

asked Morrison to state her name and whether she was the current conservatorship worker in the case. Counsel then moved for a recess, stating that "I need additional time." A.P.'s counsel, J.C.'s counsel, and the attorney ad litem appointed to represent the child each expressed that they had no objection to the recess. The trial court stated: "Okay. I'll find it's in the best interest. We're going to recess it. We'll get another date. It's not going to be long."

When trial resumed on December 17, 2015, A.P. was present in the courtroom but A.P.'s counsel appeared by telephone, explaining that he was ill and was on medications that "make it impossible for me to effectively try a case today." A.P.'s counsel acknowledged that "we are up against a dismissal date and technically have to call the case to trial." A.P.'s counsel stated that he believed the Department's counsel "is going to call his first witness to the stand and ask that we recess the case." The trial court advised A.P. as follows: "You understand [your counsel] is sick in bed and can't be here today, but we are going to start the trial and we're going to have to come back another day . . . because of his illness because I want to make sure that you're represented properly." A.P. replied, "Okay."

The Department then called its first witness, E.P., who is A.P.'s mother. Counsel for the Department asked the witness what her relationship is to A.P., and E.P. replied: "That's my daughter." Counsel then asked: "[C]an you tell me about an incident that occurred May 23rd of 2014 involving your daughter?" Before E.P. answered, A.P.'s counsel asked for a recess until such time that he could be physically present in the courtroom. The other attorneys stated that they had no objection. Subsequently, A.P. gave her telephone number to the bailiff and to her counsel.

3

Trial resumed again on January 29, 2016, with both A.P. and her counsel present in the courtroom. At that time, A.P.'s counsel noted that an associate judge was presiding instead of the district judge that presided over the prior trial settings. A.P.'s counsel asked for the case to be reset until such time as the district judge could hear the case. Counsel for the Department and the attorney ad litem agreed, and the case was reset for March 25, 2016.

At the March 25, 2016 setting, A.P.'s counsel advised the court that A.P. had been arrested on or about March 8 and that the bailiff had "attempted to make arrangements to have her brought from the Nueces County Jail," but that A.P. "has refused transport." The transport director of the Nueces County Jail, testifying via telephone, agreed that his officers had approached A.P. and advised her that they were taking her to the court for this proceeding, but that "[s]he said she did not want to go to court and for us not to f'ing touch her." The transport director stated that A.P. "didn't even want to stand up for us. She was in her bunk at the time. She would not respond to directives to come to the door and get ready for court." He agreed that "there would be a substantial[] likelihood that she or others could be injured in transporting her" and that "no other problem would have prevented [his] office from transporting her here today."

On cross-examination by counsel for the Department, the transport director testified as follows:

Q.    At this very moment, is there any reason that [A.P.] can [sic] be transported to this courtroom?

A.    Well, we can try again.

Q.    Okay. So you'd have to try the whole thing again, right?

A.    Yes, sir.

4

Q.      Is that sheriff department policy, to try again?

A.      Yes, sir.

Q.      Okay.  How many times do you have to try again before you have to give up?

A.      If we have to give up?

Q.      Yeah.  In other words, if the Court rules that you have tried enough times, is that good enough?

A.      Yes, sir.

Q.      Okay. I move this Court that they've tried enough.  Thank you.

A.      Thank you, sir.

A.P.'s counsel then stated:  "Your Honor, up until [the Department's counsel's] . . . questions, I thought we were ready to proceed, but after that, I'm not quite sure whether we are because I'm not sure whether or not we've exhausted any of our opportunities."  The trial court then stated as follows:

> Okay.  Well, here's the Court's thought on it.  The Court's thought is we've been through this situation before a number of times here where there's been outbursts in court and I believe we had to ask her to be removed from the Court a number of times.  Not only that, I'm not going to put the jailers in danger to keep going back into the cell in order to almost provoke a violent outburst.  I'm 100 percent positive that if I ask them to keep doing this, they'll keep doing this.  If I probably ask them to restrain her and bring her over in a strai[t] jacket, they'd probably do it, but that's not—we're not going to do that.

Counsel for the Department then asked the trial court to acknowledge that that "this Court has conducted a balancing test and determined that it is not appropriate, not safe to the community to attempt to transport this prisoner anymore to this courtroom" and that "she's not even available to testify by phone."  The trial court stated:  "I'm fine with—I'll make that determination."

Following the presentation of testimony, the trial court rendered judgment

5

terminating the parental rights of A.P. and finding by clear and convincing evidence that A.P. has a mental or emotional illness or a mental deficiency that renders her unable to provide for the physical, emotional, and mental needs of J.P.; that the illness or deficiency will continue to render her unable to provide for J.P.'s needs until J.P.'s eighteenth birthday; that the Department has been the temporary or sole managing conservator of J.P. for the six months preceding the filing of the petition; and that the Department has made reasonable efforts to return J.P. to A.P. *See* TEX. FAM. CODE ANN. § 161.003(a)(1)– (4). The judgment further found by clear and convincing evidence that A.P.: (1) knowingly placed or knowingly allowed J.P. to remain in conditions or surroundings which endanger his physical or emotional well-being, *see id.* § 161.001(b)(1)(D); (2) engaged in conduct or knowingly placed J.P. with persons who engaged in conduct which endangers his well-being, *see id.* § 161.001(b)(1)(E); (3) constructively abandoned J.P., who has been in the permanent or temporary managing conservatorship of the Department for not less than six months, *see id.* § 161.001(b)(1)(N); (4) failed to comply with the provisions of a court order which established the actions necessary for her to obtain J.P., *see id.* § 161.001(b)(1)(O); and (5) used a controlled substance, as defined in chapter 481 of the Texas Health and Safety Code, in a manner that endangered the health or safety of J.P., and (i) failed to complete a court-ordered substance abuse treatment program; or (ii) after completion of a court-ordered substance abuse treatment program, continued to abuse a controlled substance. *See id.* § 161.001(b)(1)(P). Finally, the judgment found by clear and convincing evidence that termination of A.P.'s parental rights was in J.P.'s best interest. *See id.* §§ 161.001(b)(2), 161.003(a)(5).[2]

---

[2] The final judgment also terminated the parental rights of J.C., who is not a party to this appeal.

This appeal followed.

## II. DISCUSSION

### A.    Due Process

A.P. argues by her first three issues that she was deprived of her constitutional right to due process during the trial proceedings. *See* U.S. CONST. amend. XIV; TEX. CONST. art. I, § 19. Involuntary termination of parental rights involves fundamental constitutional rights and divests the parent and child of all legal rights, privileges, duties and powers normally existing between them, except for the child's right to inherit from the parent. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985); *In re L.J.N.*, 329 S.W.3d 667, 671 (Tex. App.—Corpus Christi 2010, no pet.); *see Troxel v. Granville*, 530 U.S. 57, 66 (2000) ("[T]he Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children."). "Termination of parental rights, the total and irrevocable dissolution of the parent-child relationship, constitutes the 'death penalty' of civil cases." *In re K.M.L.*, 443 S.W.3d 101, 121 (Tex. 2014) (Lehrmann, J., concurring). Accordingly, termination proceedings must be strictly scrutinized. *Id.* at 112.

### 1.    Waiver of Jury Trial

By her first issue, A.P. contends that the trial court denied her "adequate due process by accepting a waiver of jury trial by counsel for a party that was mentally incompetent to understand the ramifications of the waiver." She argues specifically that, although her trial counsel stated on the record at the November 2, 2015 trial setting that A.P. "[p]reviously . . . waived jury trial," "there is no record of such waiver, and no hearings

7

were conducted during the time that [trial counsel] urged the objection to the Department's withdrawal of their request for jury trial and the trial that started on November 2, 2015."

The United States and Texas Constitutions guarantee the right to trial by jury. *See* U.S. CONST. art. III, § 2; TEX. CONST. art. I, § 15. We review a trial court's denial of a jury demand for an abuse of discretion. *Mercedes-Benz Credit Corp. v. Rhyne*, 925 S.W.2d 664, 666 (Tex. 1996). We examine the entire record and reverse only if the trial court's decision is arbitrary, unreasonable, or without reference to guiding principles. *Id.* (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241 (Tex. 1985)).

We disagree that A.P.'s due process rights were violated in this regard. The family code provides for trial by jury upon request. *See* TEX. FAM. CODE ANN. § 105.002 (West, Westlaw through 2015 R.S.). Unlike in criminal cases, the family code does not require an express waiver of trial by jury. *In re K.M.H.*, 181 S.W.3d 1, 8 (Tex. App.—Houston [14th Dist.] 2005, no pet.). But when one party has made a proper jury demand, that demand may not be withdrawn over the objection of an adversely interested party. TEX. R. CIV. P. 220. Here, although A.P.'s counsel stated correctly at the October 25, 2015 trial setting that he was entitled to rely on the Department's jury demand, he later stated at the November 2, 2015 jury setting that A.P. had waived jury trial.

Citing *Brockie v. Webb*, 244 S.W.3d 905, 908 (Tex. App.—Dallas 2008, pet. denied), A.P. further contends that "the Department's withdrawal of their jury trial request was within 30 days of the scheduled trial and was therefore not timely." In *Brockie*, the Dallas Court of Appeals held that a party in a divorce proceeding waived her right to a jury trial because she filed her request therefor twelve days after the divorce trial began. *Id.* (citing TEX. R. CIV. P. 216). A.P. cites no authority, and we find none, establishing that

8

a trial which is set to be held before a jury may not be changed to a bench trial within thirty days of the trial date.

A.P. also contends in her first issue that "[i]t is clear that [she] did not have the capacity to waive jury trial" and "her absence from the trial was due to her mental instability, not from a knowing refusal to participate." Insofar as A.P. argues that this constituted a violation of her due process rights, she does not support this argument with any record references or citations to authority. Accordingly, it is waived. *See* TEX. R. APP. P. 38.1(i).

We overrule A.P.'s first issue.

### 2. Trial in Absentia

By her second issue, A.P. argues that the trial court erred, violating her due process rights, by proceeding with trial without her presence "when her refusal to attend trial was due to incarceration, [her] mental status, and the facility's refusal to transport [her]." In support of her issue, A.P. cites *In re M.S.*, in which the Texas Supreme Court noted that, in evaluating claims of due process violations resulting from procedural rules in the parental termination context, "we weigh three factors—the private interests at stake, the government's interest in the proceeding, and the risk of erroneous deprivation of parental rights—and balance the net result against the presumption that our procedural rule comports with constitutional due process requirements." 115 S.W.3d 534, 547 (Tex. 2003) (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

Here, the record reflects clearly that A.P. was incarcerated at the Nueces County Jail on March 25, 2016, and that officers at the jail attempted to transport her to court to attend the trial, but that she refused to cooperate with the officers. The jail's transport

9

director testified that there is "substantial[] likelihood that she or others could be injured" if they attempted to force her to comply. The record shows that A.P. voluntarily absented herself from the proceedings. *See Moore v. State*, 670 S.W.2d 259, 261 (Tex. Crim. App. 1984) (holding, in the criminal context, that the trial court did not abuse its discretion in denying a continuance and proceeding with trial where the court "could have reasonably inferred from the information before it that appellant voluntarily absented himself"); *see also In re F.E.M.*, No. 11-12-00257-CV, 2013 WL 1092716, at *6 (Tex. App.—Eastland Mar. 14, 2013, pet. denied) (mem. op.) (finding no error in the refusal to grant a continuance of parental termination trial where "the trial court could have determined that the parents voluntarily absented themselves from trial"). Moreover, her counsel did not request a continuance. *See Moore*, 670 S.W.2d at 261; *In re F.E.M.*, 2013 WL 1092716, at *6; *see also* TEX. R. APP. P. 33.1(a)(1). We overrule A.P.'s second issue.

### 3. Cross-Examination of Witnesses

By her fourth issue, A.P. argues that her due process rights were violated because she was not able to cross-examine witnesses Morrison or E.P. At the November 2, 2015 trial setting, Morrison testified as to her name and occupation, after which the Department's counsel moved for a continuance. A.P.'s counsel expressed no objection. E.P. testified that she was A.P.'s mother at the March 25, 2016 setting, after which A.P.'s counsel requested a continuance until such time as he could personally appear.

Neither Morrison nor E.P. testified as to any fact probative on the issue of parental termination, and both witnesses were excused without objection by A.P.'s counsel. Although neither witness testified at the March 25, 2016 trial setting, A.P.'s counsel was present at that setting and did not call those witnesses or express an objection. A.P. has

10

not established any violation of her due process rights in this regard. We overrule her fourth issue.

**B.     Sufficiency of the Evidence**

By her third issue, A.P. argues that the evidence was legally and factually insufficient to support termination of her parental rights under family code section 161.003. However, the trial court's judgment found not only that termination was supported under section 161.003, but also under various provisions of section 161.001(b)(1). *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (N), (O), (P). A.P. does not contest the sufficiency of the evidence supporting any of the section 161.001(b)(1) grounds, nor does she contest the sufficiency of the evidence supporting the trial court's finding that termination was in J.P.'s best interests. *See id.* §§ 161.001(b)(2), 161.003(a)(5). Accordingly, the judgment was proper, and we overrule the issue. *See In re A.V.,* 113 S.W.3d 355, 362 (Tex. 2003) ("Only one predicate finding under section 161.001(1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest."); *In re S.N.,* 272 S.W.3d 45, 49 (Tex. App.—Waco 2008, no pet.) (noting that, "to mount a successful challenge on appeal based on evidentiary insufficiency, a party must challenge each affirmative finding of a predicate ground for termination or at minimum challenge the best interest finding"); *see also* TEX. R. APP. P. 47.1.

### III. CONCLUSION

The trial court's judgment is affirmed.

DORI CONTRERAS GARZA
Justice

11

Delivered and filed the
20th day of October, 2016.