# NO. 12-19-00353-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *IN THE INTEREST OF* | § | *APPEAL FROM THE 354TH* |
| *J.M. AND F.M.,* | § | *JUDICIAL DISTRICT COURT* |
| *CHILDREN* | § | *RAINS COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

J.S.C. appeals the termination of his parental rights. In three issues, he challenges the trial court's order to strike the jury request, and the legal and factual sufficiency of the evidence to support the termination order. We affirm.

## BACKGROUND

J.S.C. is the father and T.M.[1] is the mother of J.M. and F.M. On March 28, 2018, the Department of Family and Protective Services (the Department) filed an original petition for protection of J.M. and F.M., for conservatorship, and for termination of J.S.C.'s and T.M.'s parental rights. The Department was appointed temporary managing conservator of the children, and the parents were appointed temporary possessory conservators with limited rights, duties, possession, and access to the children.

At the conclusion of a trial on the merits, the trial court found, by clear and convincing evidence, that J.S.C. engaged in one or more of the acts or omissions necessary to support termination of his parental rights under subsections (N) and (O) of Texas Family Code Section 161.001(b)(1). The trial court also found that termination of the parent-child relationship between

---

[1] The trial court found by clear and convincing evidence that T.M. executed an unrevoked or irrevocable affidavit of relinquishment of parental rights to J.M. and F.M. The trial court also found that termination of the parent-child relationship between T.M., J.M., and F.M. was in the children's best interest. Accordingly, the trial court ordered that the parent-child relationship between T.M., J.M., and F.M. be terminated. T.M. is not a party to this appeal.

1

J.S.C., J.M., and F.M. is in the children's best interest. Based on these findings, the trial court ordered that the parent-child relationship between J.S.C., J.M., and F.M. be terminated. This appeal followed.

## TERMINATION OF PARENTAL RIGHTS

Involuntary termination of parental rights embodies fundamental constitutional rights. *Vela v. Marywood*, 17 S.W.3d 750, 759 (Tex. App.–Austin 2000), *pet. denied per curiam*, 53 S.W.3d 684 (Tex. 2001); *In re J.J.*, 911 S.W.2d 437, 439 (Tex. App.–Texarkana 1995, writ denied). Because a termination action "permanently sunders" the bonds between a parent and child, the proceedings must be strictly scrutinized. *Wiley v. Spratlan*, 543 S.W.2d 349, 352 (Tex. 1976); *In re Shaw*, 966 S.W.2d 174, 179 (Tex. App.–El Paso 1998, no pet.).

Section 161.001 of the family code permits a court to order termination of parental rights if two elements are established. TEX. FAM. CODE ANN. § 161.001 (West Supp. 2019); *In re J.M.T.*, 39 S.W.3d 234, 237 (Tex. App.–Waco 1999, no pet.). First, the parent must have engaged in any one of the acts or omissions itemized in the second subsection of the statute. TEX. FAM. CODE ANN. § 161.001(b)(1) (West Supp. 2019); *Green v. Tex. Dep't of Protective & Regulatory Servs.*, 25 S.W.3d 213, 219 (Tex. App.–El Paso 2000, no pet.); *In re J.M.T.*, 39 S.W.3d at 237. Second, termination must be in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(b)(2) (West Supp. 2019); *In re J.M.T.*, 39 S.W.3d at 237. Both elements must be established by clear and convincing evidence, and proof of one element does not alleviate the petitioner's burden of proving the other. TEX. FAM. CODE ANN. § 161.001; *Wiley*, 543 S.W.2d at 351; *In re J.M.T.*, 39 S.W.3d at 237.

The clear and convincing standard for termination of parental rights is both constitutionally and statutorily mandated. TEX. FAM. CODE ANN. § 161.001; *In re J.J.*, 911 S.W.2d at 439. Clear and convincing evidence means "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West 2019). The burden of proof is upon the party seeking the deprivation of parental rights. *In re J.M.T.*, 39 S.W.3d at 240.

### Standard of Review

When confronted with both a legal and factual sufficiency challenge, an appellate court must first review the legal sufficiency of the evidence. *Glover v. Tex. Gen. Indem. Co.*, 619

2

S.W.2d 400, 401 (Tex. 1981); *In re M.D.S.*, 1 S.W.3d 190, 197 (Tex. App.–Amarillo 1999, no pet.). In conducting a legal sufficiency review, we must look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its findings were true. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We must assume that the fact finder settled disputed facts in favor of its finding if a reasonable fact finder could do so and disregard all evidence that a reasonable fact finder could have disbelieved or found incredible. *Id*.

The appropriate standard for reviewing a factual sufficiency challenge to the termination findings is whether the evidence is such that a fact finder could reasonably form a firm belief or conviction about the truth of the petitioner's allegations. *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). In determining whether the fact finder has met this standard, an appellate court considers all the evidence in the record, both that in support of and contrary to the trial court's findings. *Id*. at 27-29. Further, an appellate court should consider whether disputed evidence is such that a reasonable fact finder could not have reconciled that disputed evidence in favor of its finding. *In re J.F.C.*, 96 S.W.3d at 266. The trier of fact is the exclusive judge of the credibility of the witnesses and the weight to be given their testimony. *Nordstrom v. Nordstrom*, 965 S.W.2d 575, 580 (Tex. App.–Houston [1st Dist.] 1997, pet. denied).

**Termination under Section 16.001(b)(1)(N)**

In his second issue, J.S.C. argues the evidence is legally and factually insufficient to terminate his parental rights pursuant to subsection (N) of Section 161.001(b)(1). The court may order termination of the parent-child relationship if the court finds by clear and convincing evidence that the parent constructively abandoned the child who has been in the permanent or temporary managing conservatorship of the Department for not less than six months, and (i) the Department made reasonable efforts to return the child to the parent; (ii) the parent has not regularly visited or maintained significant contact with the child; and (iii) the parent demonstrated an inability to provide the child with a safe environment. TEX. FAM. CODE ANN. § 161.001(b)(1)(N) (West Supp. 2019). Here, J.S.C. only challenges subsection (N)(ii).

Under subsection (N)(ii), the evidence must be sufficient to show that J.S.C. has not regularly visited or maintained significant contact with the children. *See id*. § 161.001(b)(1)(N)(ii). The evidence at trial showed that a service plan was created for J.S.C., including regularly scheduled visitation with the children. A month after the service plan was

3

created, J.S.C. tested positive for methamphetamine, marijuana, and cocaine. Jennifer Smith, the Department caseworker, stated that as a result, J.S.C. moved into the Salvation Army in Greenville, Texas. J.S.C.'s visitation with the children was scheduled for two hours every two weeks at the Department's office in Greenville. After two months, however, J.SC. quit his job, left the Salvation Army, and did not contact the Department until two to three months later.

On July 9, 2018, the trial court ordered that J.S.C.'s visitation with the children be suspended until further order of the court. Smith testified that the suspended visitation resulted from J.S.C.'s violent conduct and incarceration. Before visitation was suspended, J.S.C. had not visited the children. In a March 28, 2019, permanency hearing order, the trial court found that J.S.C. must begin services on the court ordered service plan and establish contact with the Department and his attorney to obtain visitation. According to Smith, the order that suspended J.S.C.'s visitation also ordered him to contact Smith to obtain information about the children. In April 2019, J.S.C. contacted Smith after she sent him a letter in February 2019, and cursed at her during the conversation. J.S.C. was incarcerated in May 2019 and contacted by a courtesy worker. He told the courtesy worker that he believed his parental rights had been terminated. The courtesy worker told him to contact Smith upon his release. After his release in June 2019, J.S.C. did not contact Smith.

J.C.S. finally called Smith just prior to the September 9, 2019, mediation and left a voice mail. Smith unsuccessfully attempted to return the call. According to Smith, J.S.C. never visited the children in the approximately nineteen months in which they were in the Department's care. Nor had he contacted Smith to inquire about the children or sent money, letters, cards, or gifts to the children.

J.S.C.'s visitation history fell significantly short of the Department's minimum requisite goal of two visitations a month as directed by the service plan. *See M.C. v. Tex. Dep't of Family & Protective Servs.*, 300 S.W.3d 305, 309–10 (Tex. App.—El Paso 2009, pet. denied) (holding "it is clear that [the mother] did not regularly visit or maintain significant contact" with her child when she visited her child between six and eight times in a twelve-month period); *In re J.J.O.*, 131 S.W.3d 618, 628-30 (Tex. App.—Fort Worth 2004, no pet.) (visiting only twelve times in nine months despite weekly scheduled visits supported termination for constructive abandonment). Even J.S.C.'s incarceration for several months during the case does not weigh against the existence of overwhelming evidence that he failed to visit or maintain significant contact with his children.

4

*See **In re J.J.O.***, 131 S.W.3d at 628-30; ***In re H.R.***, 87 S.W.3d 691, 699 (Tex. App.—San Antonio 2002, no pet.) (evidence legally and factually sufficient to support constructive abandonment where evidence reflected only intermittent visits); *see, e.g.*, ***In re A.M.M.***, No. 04-15-00638-CV, 2016 WL 1359342, at *4 (Tex. App.—San Antonio Apr. 6, 2016, no pet.) (mem. op) (where father only attended four visitations in 17-month span and attributed absences to long distance between residence and city where child resided, his "excuses for failure to comply with a court order and partial compliance d[id] not factor into analysis of the issue of compliance with or satisfaction of a court order."). Further, even during the time that J.S.C. was not allowed visitation until he fulfilled his service plan, he was not prevented from communicating with his children through other means or financially supporting the children in some way. Because the evidence shows that J.S.C. never visited his children, never communicated with his children, virtually never communicated with the Department, and never financially supported the children, the evidence is legally and factually sufficient to show that J.S.C. has not regularly visited or maintained significant contact with the children. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(N)(ii). Therefore, the trial court could have formed a firm belief or conviction that J.S.C. constructively abandoned J.M. and F.M. *See **In re J.O.A.***, 283 S.W.3d 336, 344 (Tex. 2009). We overrule J.S.C.'s second issue.

### Termination under Section 16.001(b)(1)(O)

In his third issue, J.S.C. argues the evidence is legally and factually insufficient to terminate his parental rights pursuant to subsection (O) of Texas Family Code Section 161.001(b)(1). The court may order termination of the parent-child relationship if the court finds by clear and convincing evidence that the parent failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child. TEX. FAM. CODE ANN. § 161.001(b)(1)(O) (West Supp. 2019). Here, J.S.C. argues only that the children were not removed because of his abuse or neglect, and that the Department did not admit his service plan into evidence at trial, thereby never proving what he failed to do as ordered.

*Abuse or neglect*

Because the children were removed from T.M.'s care, J.S.C.'s first argument is that the children were not removed from the parent, him, under Chapter 262 for  abuse or neglect. *Id.* However, subsection (O) does not require that the parent who failed to comply with a court order be the same parent whose abuse or neglect of the child warranted the child's removal. *In re S.N.*, 287 S.W.3d 183, 188 (Tex. App.—Houston [14th Dist.] 2009, no pet.) ("Had the legislature intended such a requirement, it could have easily provided that conservatorship be 'as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child *by the parent*.'"); *In re D.R.J.*, 395 S.W.3d 316, 320 (Tex. App.—Fort Worth 2013, no pet.).

Moreover, J.S.C. argues, there was a lack of evidence that the children were removed due to abuse or neglect.  In *In re E.C.R.*, 402 S.W.3d 239 (Tex. 2013), the Texas Supreme Court determined that "subsection O requires proof of abuse or neglect." *Id.* at 246.  The supreme court considered the phrase's use and meaning in the context of the Family Code removal provisions and the Legislature's definitions of "abuse" and "neglect" in related chapters. *Id.*  Consistent with Chapter 262's removal standards, the supreme court found that "abuse" and "neglect" are to be considered broadly and necessarily include the risks or threats of the environment in which the child is placed. *Id.* at 248. If a parent neglected, sexually abused, or otherwise endangered his or her child's physical health or safety, such that initial and continued removal is appropriate, the child has been "remov[ed] from the parent under Chapter 262 for the abuse or neglect of the child." *Id.*; TEX. FAM. CODE ANN. § 161.001(b)(1)(O).

Further, in *In re E.C.R.*, the Supreme Court considered the affidavit in support of removal. *In re E.C.R.*, 402 S.W.3d at 248.  The supreme court explained that this affidavit, even if not evidence for all purposes, shows what the trial court relied on in determining whether removal was justified. *Id.*; *In re A.M.L.M.*, No. 13-18-00527-CR, 2019 WL 1187154, at *6-7 (Tex. App.—Corpus Christi Mar. 14, 2019, no pet.) (mem. op.) (considering allegations in removal affidavit in concluding children were removed for risk of neglect, including abuse of drugs by mother and father and eighteen previous investigations into the parents by the Department). Moreover, in Chapter 262, the trial court, following the adversary hearing, must order the child returned to his parent unless the court finds sufficient evidence to satisfy a person of ordinary prudence and caution that:

6

(1) there was a danger to the child's physical health or safety that was caused by an act or failure to act of the person entitled to possession and for the child to remain in the home is contrary to the child's welfare;

(2) the urgent need for protection required the immediate removal of the child and reasonable efforts, consistent with the circumstances and providing for the child's safety, were made to eliminate or prevent the child's removal; and

(3) reasonable efforts have been made to enable the child to return home, but there is a substantial risk of a continuing danger if the child is returned home.

TEX. FAM. CODE ANN. § 262.201(g) (West Supp. 2019).

In this case, the removal affidavit shows that the Department received an intake on March 26, 2018, stating that T.M. arrived at the children's school behaving erratically and verbally assaulting others without provocation. Upon being informed that there was a criminal trespass warning against her, T.M. became irate, "cursed out" the office staff, and demanded the children be withdrawn. According to the affidavit, she grabbed the children by the arms and pushed them into the car. When investigators arrived at the school, personnel stated that they believed T.M. had paranoid tendencies, was aggressive, and displayed manic behavior due to mental health issues. The investigators interviewed T.M., and the maternal grandmother and great uncle with whom she lived. Both relatives stated that T.M. was physically aggressive towards them and used marijuana.

The relatives also stated that J.S.C. physically and verbally threatened the family. J.S.C. stated that he did not recall much of what happened when he threatened T.M. and her family and that every domestic violence call was a "misunderstanding" between T.M. and him. The affidavit noted that T.M. had a criminal history and that J.S.C. admitted to being incarcerated. Further, T.M. had at least one prior case with the Department that was found "reason to believe."

T.M. admitted using marijuana and to being overwhelmed. The affidavit noted that she quickly changed emotions and, at times, yelled aggressively at the investigators. The affidavit also stated that the Department's records revealed that T.M. was diagnosed with bipolar disorder and was emotionally disturbed with a history of animal cruelty and setting fires. T.M. refused to seek professional help for her mental health issues. She agreed to a safety plan in which her great uncle would supervise her contact with the children. However, within a day, she violated the plan by taking the children out of town to stay with J.S.C.

In its temporary order following the show cause hearing, the trial court stated that it reviewed and examined the Department's pleadings and the sworn affidavit of removal. Based upon the facts contained therein and the evidence presented at the hearing, the trial court found sufficient evidence to show (1) a continuing danger to the physical health or safety of the children caused by an act or failure to act of the person entitled to possession of the children, (2) that continuation of the children in the home would be contrary to their welfare, and (3) that reasonable efforts were made to prevent or eliminate the need to remove the children. The trial court appointed the Department as managing conservator of the children, and appointed T.M. and J.S.C. as possessory conservators with limited rights, duties, possession, and access to the children.

At trial, Smith testified that the children were removed from T.M. because she used marijuana in the home and her mental health caused her to be threatening, erratic, and unsafe. Smith testified that T.M. also received a criminal trespass warning from the children's school due to her erratic behavior. The Department deemed T.M.'s home to be unsafe for the children. During the children's initial placement with the mother's uncle and grandmother, Smith testified that T.M. displayed violent conduct by holding a knife to the grandmother's throat.

From the above evidence, a reasonable fact finder could have determined that the affidavit supporting removal, together with other unchallenged findings,[2] established that the children were removed from the parent under Chapter 262 for abuse or neglect. *See In re E.C.R.*, 402 S.W.3d at 248-9. The evidence demonstrates that the trial court could have determined that the removal affidavit showed that T.M. had mental health issues for which she refused professional help, used marijuana, displayed paranoia, and erratic and threatening behavior, violated the agreed safety plan one day after it was agreed upon, and had a prior history with the Department. *Id.* Further, the testimony at trial showed that the children were removed from T.M. because her home was unsafe, and she was threatening, erratic, unsafe, and displayed violent conduct. There was no conflicting evidence at trial that a reasonable trier of fact could not have reconciled in favor of its finding and formed a firm belief or conviction that the children were removed from the parent under Chapter 262 for abuse or neglect. *See In re C.H.*, 89 S.W.3d at 25.

---

[2] Temporary orders in a suit affecting the parent-child relationship are not subject to an interlocutory appeal under the Texas Family Code. *See* TEX. FAM. CODE ANN. § 6.507 (West 2006); *In re Hughes*, 446 S.W.3d 859, 860 (Tex. App.—Texarkana 2014, no pet.) (mandamus appropriate remedy for appeal of temporary order following adversary hearing wherein child remained in care of Department). J.S.C. did not appeal the trial court's decision following the show cause hearing.

*Service Plan*

In his second argument, J.S.C. contends that there is no evidence establishing what he was required to do with respect to his service plan or the provisions of a court order with which he failed to comply. He further complains that the Department did not attempt to admit the actual service plan into evidence.

However, the record contains sufficient evidence regarding the actions J.S.C. was required to take to obtain the return of his children. J.S.C. ignores the fact that his service plan, and a court order adopting his service plan and ordering J.S.C. to comply with it, was filed in the papers of the court and is in the clerk's record. *See In re H.S.V.*, No 04-12-00150-CV, 2012 WL 3597211, at *5 (Tex. App.—San Antonio Aug. 22, 2012, pet. denied) (mem. op.) (family service plan, and order adopting plan and ordering appellant to comply with it, was filed in papers of the court and was in clerk's record…such documents specifically set forth what appellant was ordered to do to get children back). More specifically, in the temporary order following the adversary hearing, the trial court ordered J.S.C. to comply with each requirement set out in the Department's original, or any amended, service plan during the pendency of the suit. The signed service plan for J.S.C., dated April 26, was in the clerk's record. These documents specifically set forth what J.S.C. was ordered to do to with respect to his service plan.

The trial court's failure to affirmatively state on the record that it was taking judicial notice of these documents is not dispositive. Courts have held that the trial court may be presumed to have taken judicial notice of records in the court's file without any request being made and without any announcement that it has done so. *In re A.X.A.*, No. 04-09-00519-CV, 2009 WL 5150068, at *4 n.3 (Tex. App.—San Antonio Dec. 30, 2009, no pet.) (mem. op.). A "trial court is presumed to 'judicially know[] what has previously taken place in the case' tried before it, and the parties 'are not required to prove facts that a trial court judicially knows.'" *In re J.J.C.*, 302 S.W.3d 436, 446 (Tex. App.—Houston [14 Dist.] 2009, pet. denied) (quoting *Vahlsing, Inc. v. Mo. Pac. R.R. Co.*, 563 S.W.2d 669, 674 (Tex. App.—Corpus Christi 1978, no writ)). Accordingly, the trial court could consider J.S.C.'s service plan, and the order adopting same, as evidence of what he was required to do to in compliance with that plan.

The plan included random drug testing, individual counseling, substance abuse counseling, a drug assessment by the East Texas Council on Alcoholism and Drug Abuse (ETCADA), and a requirement to follow all ETCADA recommendations. The service plan also included remaining

sober, participating in visitation with the children, obtaining employment, obtaining and maintaining housing, communicating with the caseworker, notifying the caseworker within seventy-two hours if he changed residences, and complying with all the service plans, and amended service plans, throughout the case. A month after the service plan's creation, J.S.C. tested positive for methamphetamine, marijuana, and cocaine, thus failing to remain sober as required by his service plan. Further, Smith testified that he did not communicate regularly with her, failing to contact her for months at a time. Smith stated that to her knowledge, J.S.C. has been arrested three times during the case, and has not visited or communicated with the children at all during the case. According to Smith, J.S.C. failed to perform any services in this case. Peggy Walker, the CASA supervisor, stated that J.S.C. made no effort to keep up with the children or perform any services to obtain custody of the children.

From this evidence, a reasonable fact finder could have determined that J.S.C. failed to comply with the provisions of a court order that specifically established the actions necessary for him to obtain the return of the children. *See* TEX. FAM. CODE ANN. § 161.001(1)(O). The evidence showed that J.S.C. did not perform any of the services required under his court ordered service plan. Further, there was no conflicting evidence at trial that a reasonable trier of fact could not have reconciled in favor of its finding and formed a firm belief or conviction that J.S.C. failed to comply with the provisions of a court order that specifically established the actions necessary for him to obtain the return of the children. *See **In re C.H.**,* 89 S.W.3d at 25.

Therefore, we hold that the evidence is legally and factually sufficient to support termination of J.S.C.'s parental rights under subsection (O) of Texas Family Code Section 161.001(b). Accordingly, we overrule J.S.C.'s third issue.[3]

## JURY DEMAND

We now address J.S.C.'s first issue, in which he argues that the trial court erred by striking the jury demand.

---

[3] In his brief, J.S.C. did not dispute the trial court's finding that termination of his parental rights was in the best interest of the children. *See* TEX. FAM. CODE ANN. § 161.001(b)(2); TEX. R. APP. P. 47.1.

**Standard of Review and Applicable Law**

Denial of a jury trial, when a right to one is clearly shown, can be addressed both by appeal and mandamus. *In re Reiter*, 404 S.W.3d 607, 611 (Tex. App.—Houston [1st Dist.] 2010, no pet.). We review the trial court's denial of a jury demand for an abuse of discretion. *See State v. Wood Oil Distrib. Inc.,* 751 S.W.2d 863, 865 (Tex. 1988). In doing so, we examine the entire record. *See Simon v. York Crane & Rigging Co.,* 739 S.W.2d 793, 795 (Tex. 1987). We will only find an abuse of discretion when the trial court's decision is arbitrary, unreasonable, and without reference to guiding principles. *See Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985).

"The right to jury trial is one of our most precious rights" in American jurisprudence. S*ee General Motors Corp. v. Gayle*, 951 S.W.2d 469, 476 (Tex. 1997). This right is preserved in the Constitution and codified in law. *See* TEX. CONST. art. 1, § 15 ("The right of trial by jury shall remain inviolate."); TEX. FAM. CODE ANN. § 105.002 (West Supp. 2019) (proving that a parent may demand a jury trial in a parental termination case).

When any party has paid the fee for a jury trial, he shall not be permitted to withdraw the cause from the jury docket over the objection of the parties adversely interested. TEX. R. CIV. P. 220. Only when a party demands a jury and pays the fee can the opposing party rely on those actions. *See Mercedes-Benz Credit Corp. v. Rhyne*, 925 S.W.2d 664, 666 (Tex. 1996). In such a case, the trial court may not remove the case from the jury docket over the objections of the opposing party. *See* TEX. R. CIV. P. 216, 220.

**Analysis**

On December 18, 2018, T.M., filed an original answer and demand for a jury trial. At the September 16, 2019 status hearing, the Department stated that T.M. agreed to sign an affidavit of relinquishment as a result of mediation. J.S.C.'s attorney stated that he would rely on T.M.'s jury demand, but he admitted that he had been unable to communicate with J.S.C. since May or June of 2019. The trial court found that J.S.C. was appointed an attorney and had not participated in any of the hearings or remained in "good contact" with his attorney. Over the objection of J.S.C.'s attorney, the trial court struck the jury demand. The trial court noted the objection, and set the case for a final hearing and bench trial on October 7, 2019. J.S.C. was not present at the final hearing. The case proceeded as a bench trial, without any further objection from J.S.C.'s attorney.

11

Under the applicable law, J.S.C. was entitled to rely on T.M.'s jury demand and his attorney objected when the trial court struck the jury demand. *See Rhyne*, 925 S.W.2d at 666. The trial court was not permitted to remove the case from the jury docket over the objections of J.S.C.'s counsel. *See* TEX. R. CIV. P. 216, 220. Nevertheless, the Department argues that J.S.C. waived his right to a jury trial by failing to object to proceeding as a nonjury trial when his case was called to trial and tried to the bench.

There are two lines of cases regarding waiver of a right to a jury trial and what a party must do in order to preserve error. Under the first line of cases, "'when a party has perfected its right to a jury trial in accordance with Rule 216 [of the Texas Rules of Civil Procedure,] but the trial court proceeds to trial without a jury, the party  must, to preserve error, either object on the record to the trial court's action or indicate affirmatively in the record it intends to stand on its perfected right to a jury trial.'" *E.E. v. Tex. Dep't of Family & Protective Servs.*, No. 03-19-00741-CV, 2020 WL 962400, at *4 (Tex. App.—Austin Feb. 28, 2020, no pet. h.) (op.) (quoting *Sunwest Reliance Acquisitions Group, Inc. v. Provident Nat'l Assur. Co.*, 875 S.W.12d 385, 387-88 (Tex. App.—Dallas 1993, no writ)); *see In re K.M.H.*, 181 S.W.3d 1, 8 (Tex. App.—Houston [14th Dist.] 2005, no pet.); *see also In re D.R.*, 177 S.W.3d 574, 580 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) (a perfected right to a jury trial in a civil case may be waived by a party's failure to act when the trial court proceeds with a bench trial); *In re A.M.*, 936 S.W.2d 59, 61 (Tex. App.—San Antonio 1996, no writ) (a party must object to procession to trial without a jury or indicate in the record that it intends to stand on its perfected right to a jury trial); *see also Gammill v. Tex. Dep't of Family & Protective Servs.*, No. 03-08-00140-CV, 2009 WL 1423975, at *3 (Tex. App.—Austin May 22, 2009, pet. denied) (mem. op.). The reasoning underlying this position is that "'the right [to a jury trial] in a civil case is not self-executing: to invoke and perfect the right to a jury trial in a civil case a party must first comply with the requirements of rule 216;' once perfected, 'the right to a jury trial still may be waived expressly or by a party's failure to act.'" *Vardilos v. Vardilos*, 219 S.W.3d 920, 923 (Tex. App.—Dallas 2007, no pet.) (quoting *Sunwest Reliance*, 875 S.W.2d at 387-88). According to this line of cases,  a party waives his right to a jury trial by failing to object to proceeding without a jury when the case was called for trial. *In re W.G.O., III*, No. 02-12-00059-CV, 2013 WL 105661, at *2 (Tex. App—Fort Worth Jan. 10, 2013, pet. denied) (mem. op.).

Under the second line of cases, to avoid waiver, a party must simply obtain an adverse ruling from the trial court on his jury demand. *E.E.*, 2020 WL 962400, at *5; *see McKern v. McCann*, 675 S.W.2d 222, 223-24 (Tex. App.—Austin 1984, no writ) (concluding that because party previously received adverse ruling on issue of jury demand, she did not waive right to jury trial when announced ready and proceeded to judgment in bench trial); *Coleman v. Sadler*, 608 S.W.2d 344, 346-47 (Tex. App.—Amarillo 1980, no writ). The reason being that "[t]he trial court's adverse ruling on the jury demand remove[s] the jury trial alternative and, in effect," leaves the party "without a conscious choice between a jury and non-jury trial." *Coleman,* 608 S.W.2d at 346; *see also Trapnell v. Sysco Food Servs. Inc.*, 850 S.W.2d 529, 547 (Tex. App—Corpus Christi 1992) ("Merely proceeding to trial in a case in which a trial by jury is unavailable, without more, does not establish waiver of that right."), *aff'd*, 890 S.W.2d 796 (Tex. 1994); *cf. Jernigan v. Langley*, 111 S.W.3d 153, 156 (Tex. 2003) ("Waiver is largely a matter of intent, and for implied waiver to be found through a party's actions, intent must be clearly demonstrated by the surrounding facts and circumstances."); *Sun Expl. & Prod. Co. v. Benton*, 728 S.W.2d 35, 37 (Tex. 1987) ("Waiver is an intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right.").

Recently, the Austin Court of Appeals concluded that a party did not waive his right to a jury trial by participating in the bench trial. *Brubaker v. Brubaker*, No. 03-18-00273-CV, 2019 WL 6205518, at *3 (Tex. App.—Austin Nov. 21, 2019, no pet.) (mem. op.); *see also Edmond v. Mark McElhannon/Accent Real Servs.*, No. 03-17-00760-CV, 2018 WL 3432676, at *1 (Tex. App—Austin July 17, 2018, no pet.) (mem. op.) ("An appellant may preserve his right to a jury trial despite announcing 'ready' at the opening of a bench trial if he has taken other affirmative action to show he did not intend to waive his right to a jury trial."). The Austin Court found the trial court impliedly overruled the party's objection to removal of the cause from the jury docket, and the record did not indicate that the party otherwise knowingly waived his right to a jury trial. *Brubaker*, 2019 WL 6205518, at *3. In another recent case, the Austin Court found that a mother obtained an adverse ruling from the district court on her jury demand and did not waive her right to a jury trial by participating in the bench trial. *E.E.*, 2020 WL 962400, at *5. We find this second line of cases to be persuasive because a trial court's adverse ruling on a jury demand removes the jury trial alternative and leaves the party "without a conscious choice between a jury

13

and non-jury trial."[4] *See Coleman,* 608 S.W.2d at 346. This is particularly true given that we strictly scrutinize termination proceedings and closely scrutinize the denial of the right to a jury trial. *See Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985); *see also E.E.*, 2020 WL 962400, at *3.

Here, consistent with *McKern* and *Coleman*, J.S.C.'s counsel expressed the intention to rely on T.M.'s jury demand, the trial court struck the demand, and counsel objected to the trial court's striking of the jury demand. Thus, he obtained an adverse ruling from the trial court on the jury demand on which he was entitled to rely. *See McKern*, 675 S.W.2d at 223-24; *Coleman*, 608 S.W.2d at 346-47; *Rhyne*, 925 S.W.2d at 666. The adverse ruling removed the possibility of a jury trial and left J.S.C. with no choice but to proceed with the bench trial. *See E.E.*, 2020 WL 962400, at *5. Although J.S.C. did not further object on the day of the bench trial, the record also does not show that he otherwise knowingly waived his right to a jury trial. *See Brubaker,* 2019 WL 6205518, at *3. Accordingly, we conclude that J.S.C. did not waive his right to a jury trial by participating in the bench trial. *See E.E.*, 2020 WL 962400, at *5; *McKern*, 675 S.W.2d at 223-24; *Coleman*, 608 S.W.2d a 346-47; *Browning v. Holloway*, 620 S.W.2d 611, 617 (Tex. App—Dallas 1981, writ ref'd n.r.e.).

Having so concluded, we now must address harm.[5] "A refusal to grant a jury trial is harmless error only if the record shows that no material issues of fact exist and an instructed verdict would have been justified." *Halsell v. Dehoyos*, 810 S.W.2d 371, 372 (Tex. 1991); *In re J.N.F*., 116 S.W.3d 426, 437 (Tex. App.—Houston [14th Dist.] 2003, no pet.). A material fact is one that is "significant or essential to the issue or matter at hand." BLACK'S LAW DICTIONARY 629 (8th ed.). A directed verdict is warranted when the evidence is such that no other verdict can be rendered and the moving party is entitled, as a matter of law, to a judgment. *In re W.A.R.*, No. 10-06-00165-CV, 2006 WL 3759189, at *1 (Tex. App.—Waco Dec. 20, 2006, no pet.) (mem. op.); *Byrd v. Delasancha*, 195 S.W.3d 834, 836 (Tex. App.—Dallas 2006, no pet.). However, it is error for a trial court to direct a verdict when a material issue is raised by the evidence. *In re W.A.R.*, 2006 WL 3759189, at *1. If there is any conflicting evidence of probative value, a directed verdict is improper and the case must be remanded for the jury to determine that issue. *Id.* If reasonable minds could differ as to the controlling facts, a trial court errs if it grants a directed verdict and

---

[4] To the extent that this case involves termination of parental rights, we decline to follow our prior precedent in *Walker v. Walker*, 619 S.W.2d 196, 198 (Tex. App.—Tyler 1981, writ ref'd n.r.e.).

[5] J.S.C.'s brief does not discuss harm.

14

refuses to submit the issues to the jury. *Id.*; *Byrd*, 195 S.W.3d at 837 (citing *Latham v. Castillo*, 972 S.W.2d 66, 68 (Tex.1998)).

In *In re L.J.G.*, the trial court struck the mother's jury demand as a sanction for failing to attend court-ordered mediation. *See In re L.J.G.*, No. 04-17-00526-CV, 2018 WL 340129, at \*3 (Tex. App.—San Antonio Jan. 10, 2018, no pet.) (mem. op.). The San Antonio Court of Appeals stated that, "assuming the *Halsell* harm analysis applies, in order to terminate [the mother's] parental rights, the Department had the burden to prove by clear and convincing evidence: (1) one of the predicate grounds in subsection 161.001(b)(1); and (2) that termination is in the best interest of the children." *See id.* at \*5. On appeal, the mother challenged only the trial court's best interest finding. *Id*. at \*1. Without mentioning any specific material facts that were disputed in the case, the court of appeals generally held that because numerous material fact issues exist in a parental termination case, the erroneous denial of a jury trial was harmful error. *See id.* at \*5. The court of appeals ultimately determined that the evidence was legally sufficient to support the trial court's finding that termination of the mother's parental rights was in the children's best interest. *See id.* at \*7. Because the court of appeals determined that the case must be remanded for a jury trial, it did not make a finding regarding the factual sufficiency of the evidence. *See id.* at \*5.

Similarly, the Austin Court of Appeals adopted a presumptive harm analysis in "[s]uits affecting the parent-child relationship" because such cases "are 'intensely fact driven' and involve a best-interest analysis that requires balancing of many factors." *Young v. Young*, No. 03-14-00720-CV, 2016 WL 7339117, at \*9 (Tex. App.—Austin Dec. 15, 2016, no pet.) (mem. op.) (citing *Lenz v. Lenz*, 79 S.W.3d 10, 19 (Tex. 2002)). The court of appeals did not address the sufficiency of the evidence, but stated that the record reflected the existence of numerous material fact issues regarding the conservatorship of the child, and that the denial of a jury trial was harmful error. *See id.* (citing *Simpson v. Stem*, 822 S.W.2d 323, 324-25 (Tex. App.—Waco 1992, orig. proceeding) (reversing order denying timely jury demand, noting that "the permanent custody of the children clearly involves factual disputes upon which a jury could pass.")).

As stated before, the wrongful denial of a jury trial is harmful when the case contains material fact questions. *See Rhyne*, 925 S.W.2d at 667. And in most contested termination and child custody cases, material fact issues do exist. However, we decline to adopt the presumptive harm approach found in *Young* and *In re L.J.G.* Even in termination and child custody

15

proceedings, before finding harm, we believe the entire record should be reviewed for the existence of any material fact issues and whether an instructed verdict would have been justified.

Having done so, in contrast to *In re L.J.G.* and *Young*, no disputed issues of material fact exist for resolution by a factfinder. The evidence shows that only two witnesses testified at trial: the Department caseworker (Smith) and the CASA supervisor. J.S.C. did not appear at the final hearing; thus, he did not testify. Other than cross-examination of the Department's two witnesses, J.S.C. presented no evidence to explain his nineteen-month failure to seek contact with the children or comply with his service plan. And as previously discussed, the evidence was legally and factually sufficient to support the termination order under subsections (N) and (O) of Texas Family Code Section 161.001(b)(1). The record contains no disputed evidence regarding subsection (N), constructive abandonment. Rather, the undisputed evidence showed that J.S.C. never visited his children, never communicated with his children, virtually never communicated with the Department, and never financially supported the children. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(N). The record also contains no disputed evidence regarding subsection (O), compliance with a court ordered service plan; the evidence showed that J.S.C. performed none of the services required under his service plan. *See id.* § 161.001(b)(1)(O). J.S.C. does not raise the issue of the best interest of the children.

Based on the record before us, there is no conflicting evidence of probative value. Had J.S.C.'s jury demand not been struck, the Department would have been entitled to seek a directed verdict asking the court to render judgment without submitting a charge to the jury because there is nothing for a jury to decide. *See C.B. v. Tex. Dep't of Family & Protective Servs.*, 440 S.W.3d 756, 769 (Tex. App.—El Paso 2013, no pet.); *In re W.A.R.*, , 2006 WL 3759189, at *1; *Byrd*, 195 S.W.3d at 836. And the trial court would have been justified in granting such a motion.

We are mindful that J.S.C. had a right of trial by jury in this termination case and the trial court erred in denying him this right when it struck the jury demand. *See Rhyne*, 925 S.W.2d; TEX. R. CIV. P. 216, 220. Though many times the improper striking of a jury demand in a termination case represents harmful error, the record and facts in this case present a rare situation where harm has not been shown and the holding in this case should be limited as such.[7] Accordingly, because

---

[7] As previously noted, J.S.C. does not contest that termination is in the children's best interest, thereby further distinguishing this case from the holding in *In re L.J.G.* Further, in *In re L.J.G.*, the court of appeals did not point to any conflicting evidence in its determination that the evidence was legally sufficient to support termination on the grounds of best interest. *See In re L.J.G.*, 2018 WL 340129, at *7.

16

the evidence raised no material issues of fact and an instructed verdict would have been justified as to the two statutory termination grounds pursued by the Department, we conclude that the trial court's improper denial of the jury demand constitutes harmless error. *See Halsell*, 810 S.W.2d at 372; *In re J.N.F*., 116 S.W.3d at 437. We overrule J.S.C.'s first issue.

## DISPOSITION

Having overruled J.S.C.'s first, second, and third issues, we *affirm* the judgment of the trial court.

<u>GREG NEELEY</u>
Justice

Opinion delivered March 31, 2020.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

17



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**MARCH 31, 2020**

**NO. 12-19-00353-CV**

**IN THE INTEREST OF J. M. AND F. M., CHILDREN**

Appeal from the 354th District Court
of Rains County, Texas (Tr.Ct.No. 10402)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*